FLAMINGO PARADISE GAMING, LLC, A NEVADA LIMITED LIABILITY COMPANY DBA TERRIBLE'S HOTEL AND CASINO; HIGCO, INC., A NEVADA CORPORATION DBA THREE ANGRY WIVES PUB; MARKET GAMING, INC., A NEVADA CORPORATION; CARDIVAN COMPANY, A NEVADA CORPORATION; E-T-T, INC., A NEVADA CORPORATION; AND NEVADA TAVERN OWNERS ASSOCIATION, APPELLANTS, *v.* GEORGE CHANOS, ATTORNEY GENERAL OF THE STATE OF NEVADA; DAVID ROGER, CLARK COUNTY DISTRICT ATTORNEY; BILL YOUNG, SHERIFF OF LAS VEGAS METROPOLITAN POLICE DEPARTMENT; BRADFORD JERBIC, CITY ATTORNEY FOR THE CITY OF LAS VEGAS; KAREN COYNE, CHIEF CITY MARSHAL FOR THE CITY OF LAS VEGAS; RICHARD D. PERKINS, POLICE CHIEF OF THE CITY OF HENDERSON; SHAUNA HUGHES, CITY ATTORNEY FOR THE CITY OF HENDERSON; JOSEPH K. FORTI, POLICE CHIEF OF THE CITY OF NORTH LAS VEGAS; CARIE A. TORRENCE, CITY ATTORNEY FOR THE CITY OF NORTH LAS VEGAS; DR. LAWRENCE SANDS, CHIEF HEALTH OFFICER FOR THE SOUTHERN NEVADA HEALTH DISTRICT; AND NEVADA RESORT ASSOCIATION, A NONPROFIT COOPERATIVE ASSOCIATION, RESPONDENTS.

GEORGE CHANOS, CROSS-APPELLANT, *v.* FLAMINGO PARADISE GAMING, LLC, A NEVADA LIMITED LIABILITY COMPANY DBA TERRIBLE'S HOTEL AND CASINO; HIGCO, INC., A NEVADA CORPORATION DBA THREE ANGRY WIVES PUB; MARKET GAMING, INC., A NEVADA CORPORATION; CARDIVAN COMPANY, A NEVADA CORPORATION; E-T-T, INC., A NEVADA CORPORATION; AND NEVADA TAVERN OWNERS ASSOCIATION, CROSS-RESPONDENTS.

No. 49223

September 24, 2009                                    217 P.3d 546

*Jones Vargas* and *Bradley Scott Schrager, Kirk B. Lenhard,* and *Kathleen L. Fellows,* Las Vegas, for Appellants/Cross-Respondents Flamingo Paradise Gaming, LLC, Higco, Inc., Market Gaming, Inc., Cardivan Company, and E-T-T, Inc.

*Kummer Kaempfer Bonner Renshaw & Ferrario* and *Mark E. Ferrario* and *Tami D. Cowden,* Las Vegas, for Appellant Nevada Tavern Owners Association.

*Catherine Cortez Masto,* Attorney General, *Christine M. Guerci-Nyhus,* Chief Deputy Attorney General, and *Nancy D. Savage,* Senior Deputy Attorney General, Carson City, for Respondent/Cross-Appellant Chanos.

*David J. Roger,* District Attorney, and *Mary-Anne Miller,* Deputy District Attorney, Clark County, for Respondents Roger and Young.

*Bradford R. Jerbic,* City Attorney, and *Philip R. Byrnes,* Deputy City Attorney, Las Vegas, for Respondents Jerbic and Coyne.

*Shauna M. Hughes,* City Attorney, and *David W. Mincavage,* Assistant City Attorney, Henderson, for Respondents Perkins and Hughes.

*Carie A. Torrence,* City Attorney, and *Jeffrey F. Barr,* Deputy City Attorney, North Las Vegas, for Respondents Forti and Torrence.

*Stephen F. Smith,* Las Vegas, for Respondent Sands.

*Brownstein Hyatt Farber Schreck, LLP,* and *Todd L. Bice* and *Nathan T.H. Lloyd,* Las Vegas, for Respondent Nevada Resort Association.

*Lemons, Grundy & Eisenberg* and *Robert L. Eisenberg,* Reno, for Amicus Curiae American Cancer Society.

## OPINION

By the Court, HARDESTY, C.J.:

This appeal involves a facial challenge to the constitutionality of Nevada's Clean Indoor Air Act (NCIAA), which was passed as a ballot measure in 2006 and codified in NRS 202.2483. The NCIAA prohibits smoking in schools and ''indoor places of employment'' but provides exceptions for gaming areas in casinos, stand-alone bars, and strip clubs. In an action for injunctive and declaratory relief, appellants challenged the constitutional validity of the statute. The district court ruled that the statute was unconstitutionally vague for criminal enforcement purposes but not for civil enforcement purposes, and as a result, it severed from the statute the portion permitting the imposition of criminal penalties. In reaching this conclusion, the district court found that several terms within the statute were vague and the statute lacked a criminal intent requirement necessary to provide sufficient guidance for criminal enforcement of the statute. But the district court also found that the statute was not too vague for civil enforcement based on its conclusion that the test

for constitutional vagueness is less strict for civil enforcement than criminal enforcement.

We conclude that the district court correctly ruled that under a facial challenge the statute is constitutional for civil enforcement but unconstitutionally vague for criminal enforcement. A statute containing a criminal penalty is facially vague when vagueness permeates the text of the statute, while a statute that only involves civil penalties is only facially vague if it is void in all its applications. As vagueness permeates the text of the NCIAA, it is unconstitutionally vague for criminal enforcement. We further conclude that the district court properly severed the criminal enforcement provision from the statute because the statute, after severance, can be legally enforced and it was the intent of the proponents of the statute that the act remain in effect if a portion was severed. A review of the NCIAA, after severance, indicates that the statute survives a facial vagueness challenge, as it is not vague in all its applications. While we recognize that the NCIAA contains numerous defects that may potentially be subject to as-applied challenges, here, the civil enforcement of the statute does not violate constitutional due process rights for vagueness under the minimal requirements for surviving a facial challenge. Finally, we conclude that the statute does not violate equal protection, nor does it effect an unconstitutional government taking of private property. Accordingly, we affirm the district court's order upholding the civil enforcement of the statute and severing the statute's criminal enforcement provision as unconstitutional.

## FACTS AND PROCEDURAL HISTORY

The Nevada Clean Indoor Air Act was enacted by initiative in 2006 and codified in NRS 202.2483.[2] Its stated purpose was to protect families and children from the harmful effects of secondhand smoke. NRS 202.2483 (Reviser's note). The NCIAA prohibits smoking in most indoor public places,[3] with exceptions for casino

---

[2]The NCIAA was challenged, preelection, in this court, resulting in the opinion, *Herbst Gaming, Inc. v. Secretary of State*, 122 Nev. 877, 141 P.3d 1224 (2006). In *Herbst Gaming*, several constitutional challenges to the NCIAA were raised; however, this court concluded that the constitutional challenges were premature and declined to address them at that time. *Id.* at 888, 141 P.3d at 1231. The voters passed the ballot petition and the NCIAA was codified as NRS 202.2483.

[3]NRS 202.2483(1)(a)-(g) identifies the indoor public places in which smoking is prohibited:

1. Except as otherwise provided in subsection 3, smoking tobacco in any form is prohibited within indoor places of employment including, but not limited to, the following:
   (a) Child care facilities;
   (b) Movie theatres;

gaming areas, stand-alone bars and taverns, retail tobacco stores, strip clubs, and brothels.[4] The statute imposes both criminal and civil penalties for violations.[5]

After the NCIAA passed, appellants, various business entities, brought suit in district court for declaratory and injunctive relief, arguing that the statute was unconstitutional on several grounds. The district court granted a temporary restraining order preventing the enforcement of the statute and set a hearing date for a preliminary injunction. Based on case authority suggesting that a less-strict test should be applied to civil statutes, the district court determined that it should properly review the NCIAA separately as a criminal statute and then as a civil statute. The court concluded that appellants were likely to succeed in demonstrating that the criminal portion of the statute was unconstitutional, but not the civil portion of the statute. Therefore, the district court granted a partial preliminary injunction.

The parties then filed cross-motions for summary judgment, with all parties acknowledging that the issues presented concerned questions of law because only a facial challenge to the statute was asserted. The district court held a hearing on the summary judgment motions, which was in effect a continuation of the hearing for a preliminary injunction. At the conclusion of the hearing, the district court entered an order that found the criminal penalty portion of the statute unconstitutionally vague, and the court ordered that portion of the statute severed. The district court upheld, as constitutional, the remainder of the statute.

This appeal and cross-appeal followed. Appellants challenge the portion of the district court's order that severed the criminal penal-

---

(c) Video arcades;

(d) Government buildings and public places;

(e) Malls and retail establishments;

(f) All areas of grocery stores; and

(g) All indoor areas within restaurants.

[4]NRS 202.2483(3)(a)-(e) lists exceptions to the smoking ban:

3. Smoking tobacco is not prohibited in:

(a) Areas within casinos where loitering by minors is already prohibited by state law pursuant to NRS 463.350;

(b) Stand-alone bars, taverns and saloons;

(c) Strip clubs or brothels;

(d) Retail tobacco stores; and

(e) Private residences, including private residences which may serve as an office workplace, except if used as a child care, an adult day care or a health care facility.

[5]NRS 202.2483(7) provides for both criminal and civil enforcement and penalties:

7. Health authorities, police officers of cities or towns, sheriffs and their deputies shall, within their respective jurisdictions, enforce the provisions of this section and shall issue citations for violations of this section pursuant to NRS 202.2492 [criminal] and NRS 202.24925 [civil].

ties and declared the statute constitutional as a civil statute, arguing that the entire statute is unconstitutional. Cross-appellant George Chanos challenges the district court's determination that the criminal portion of the statute was unconstitutionally vague. An amicus curiae brief in support of respondents' position was filed by the American Cancer Society.

## DISCUSSION

### Standard of review

The determination of whether a statute is constitutional is a question of law, which this court reviews de novo. *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). "Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional." *Id.* The court must interpret a statute in a reasonable manner, that is, "[t]he words of the statute should be construed in light of the policy and spirit of the law, and the interpretation made should avoid absurd results." *Desert Valley Water Co. v. State Engineer*, 104 Nev. 718, 720, 766 P.2d 886, 886-87 (1988). In reviewing a statute, it "should be given [its] plain meaning and must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Mangarella v. State*, 117 Nev. 130, 133, 17 P.3d 989, 991 (2001) (internal quotation omitted).

Appellants challenge the constitutionality of the statute on three grounds: vagueness, equal protection, and governmental takings. First, we address appellants' argument that the NCIAA violates due process rights because it is unconstitutionally vague. To analyze appellants' vagueness challenge, we must initially determine the proper framework for reviewing a facial vagueness challenge, and then we apply the framework to the present case. In doing so, we address cross-appellant Chanos's contention regarding the constitutionality of the criminal enforcement of the NCIAA, whether the district court properly severed the criminal enforcement provisions, and whether the statute withstands a facial vagueness challenge after severance. Second, we examine appellants' contention that the statute violates equal protection and is therefore unconstitutional. Finally, we consider appellant Nevada Tavern Owners Association's (NTOA) claim that the NCIAA is unconstitutional because it constitutes a governmental taking of private property without providing just compensation.

### The proper framework for analyzing a facial vagueness challenge

There is a divergence of authority regarding the appropriate test that courts should apply in evaluating a facial vagueness challenge. Thus, we first address the conflicting vagueness tests and establish

a framework for analyzing the facial vagueness challenge presented in this appeal.

*Relevant legal precedent addressing facial challenges*

When analyzing whether a statute is unconstitutionally vague in violation of due process, courts generally apply a two-factor test. *Silvar*, 122 Nev. at 293, 129 P.3d at 685; *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Under this two-factor test, an act is unconstitutionally vague if it "(1) fails to provide notice sufficient to enable persons of ordinary intelligence to understand what conduct is prohibited and (2) lacks specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and discriminatory enforcement." *Silvar*, 122 Nev. at 293, 129 P.3d at 685. Although this test is clear for as-applied challenges, how these factors apply in a facial challenge is less certain. This uncertainty lies in the United States Supreme Court's inconsistent application of these factors in its precedent.

Beginning in 1982, the Supreme Court in *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982), stated that a facial vagueness challenge would fail unless the complainant could "demonstrate that the law is impermissibly vague in all of its applications." *Id.* at 497. But after stating this requirement, the *Hoffman Estates* opinion went on to note that "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment" and that the Court has "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99.

One year later, in *Kolender v. Lawson*, 461 U.S. 352 (1983), the Court, in a footnote, called into question the requirement that a facial challenger must establish that a statute is vague in all its applications, at least when a statute involves a constitutionally protected right or criminal penalties. *Id.* at 358 n.8. Relying in part on the additional language in *Hoffman Estates*, the Court observed that there was a varying tolerance of vagueness, depending on the nature of the statute. *Id.* The *Kolender* Court recognized that a higher standard applied to statutes involving constitutional rights or criminal penalties, however, the Court did not articulate what constituted the higher standard.

Thereafter, in *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court reaffirmed the requirement for facial challenges, in general, that the challenger must show that the statute is void in all its applications. *Id.* at 745. The *Salerno* opinion did not address the *Kolender* footnote questioning this standard.

Then, in a 1999 plurality opinion, *Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (plurality opinion), the Supreme Court again called into question the requirement that a statute be void in all its

applications for a successful facial challenge. In *Morales*, the Court enunciated a higher standard test, at least in cases in which the statute involved criminal penalties with no mens rea requirement and that dealt with constitutional rights, holding that such statutes would be unconstitutional if "vagueness permeates the text of such a law." *Id.* at 55.

More recently, the Supreme Court reaffirmed the requirement that a statute be void in all its applications for a facial challenge to be successful. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). The Court, however, recognized the disagreement among its members as to the proper standard to apply in reviewing a facial challenge, stating that "some Members of the Court have criticized [the void-in-all-its-applications] formulation." *Id.* The *Washington State Grange* case did not involve a criminal statute, and therefore, it does not resolve the issue as to what standard applies to criminal statutes not involving constitutionally protected rights.

Thus, the Supreme Court has announced differing rules for facial challenges. On the one hand, the Court in *Hoffman Estates*, *Salerno*, and *Washington State Grange*, stated the requirement that a statute must be void in all its applications. On the other hand, in *Kolender* and *Morales*, the Court questioned this standard, at least in cases with statutes involving constitutional rights or criminal penalties.

As the Supreme Court precedent fails to explain with specificity the higher standard applicable to criminal statutes, several courts have expressed concerns as to when this higher standard applies and how the standard is measured. Some courts have concluded that the higher standard only applies when a First Amendment right is at issue. *U.S. v. Rybicki*, 354 F.3d 124, 130-31 (2d Cir. 2003) (distinguishing *Morales* based on the fact that *Morales* involved constitutionally protected conduct and the holding in *Morales* was a plurality opinion and not a majority opinion); *People v. Molnar*, 857 N.E.2d 209, 225 (Ill. 2006) (stating requirement that a facial challenge requires a void-in-all-its-applications showing, without addressing cases that question this requirement). Other courts have held that the higher standard applies when any constitutional right is at issue but not simply because criminal penalties not involving a constitutional right are present, again distinguishing *Morales* and *Kolender* because those cases involved constitutional rights. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 n.19 (5th Cir. 2008) (distinguishing *Morales* on the basis that it involved constitutionally protected activity); *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir. 1984) (limiting *Kolender* to its unique set of circumstances and that it involved substantial constitutional rights); *State ex rel. Children, Youth & Families*, 999 P.2d 1045, 1051 (N.M Ct. App. 2000) (same). Still, other courts have held that a higher standard applies to statutes involving constitutional rights *or* criminal penalties.

*U.S. v. Doremus*, 888 F.2d 630, 635 (9th Cir. 1989) (recognizing the holding in *Hoffman* that a higher standard applies when criminal penalties exist); *Steffes v. City of Lawrence*, 160 P.3d 843, 850 (Kan. 2007) (stating that a higher standard exists for a facial vagueness challenge of a criminal statute).

Similarly, our prior opinions have applied the requirement that a statute be void in all its applications for facial challenges, *Matter of T.R.*, 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003), but we have also recognized the higher standard of "vagueness permeates the text" for statutes involving criminal penalties. *City of Las Vegas v. Dist. Ct.*, 118 Nev. 859, 862, 59 P.3d 477, 480 (2002). And our prior opinions have likewise evidenced confusion over how the higher standard applies by failing to explain or sometimes apply a higher standard. *Matter of T.R.*, 119 Nev. at 652, 80 P.3d at 1280; *Sheriff v. Burdg*, 118 Nev. 853, 857, 59 P.3d 484, 486-87 (2002). That the Supreme Court has not articulated a separate test for this higher standard, or provided a clear explanation of how this higher standard should apply, compounds the ongoing confusion.

### *Standards for reviewing facial vagueness challenge*

By examining the facial vagueness doctrine through the varied legal precedent, we conclude that there are two approaches to a facial vagueness challenge depending on the type of statute at issue. The first approach arises under a facial challenge to a civil statute and the plaintiff must show that the statute is impermissibly vague in all of its applications. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497 (1982). In making this showing, "[a] complainant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Matter of T.R.*, 119 Nev. at 652, 80 P.3d at 1280 (internal quotation omitted); *Hoffman Estates*, 455 U.S. at 495. But, when the statute involves criminal penalties or constitutionally protected rights, the second approach involves a higher standard of whether "vagueness permeates the text."[6] *City of Las Vegas v. Dist. Ct.*, 118 Nev. at 862, 59 P.3d at 480; *Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality opinion). Both of these standards are applied through the consideration of the two-factor test for vagueness challenges as stated above, whether the statute: "(1) fails to provide notice sufficient to enable persons of ordinary intelligence to understand what conduct is prohibited and (2) lacks specific standards, thereby encouraging, authorizing, or even failing

---

[6]We do not decide when the higher standard applies for statutes involving constitutional rights but not criminal penalties, as the parties agree that this case does not implicate any constitutionally protected rights.

to prevent arbitrary and discriminatory enforcement." *Silvar*, 122 Nev. at 293, 129 P.3d at 685; *Kolender*, 461 U.S. at 357; *Hoffman Estates*, 455 U.S. at 498.

Thus, when a statute is reviewed under the lower standard of vague in all its applications, if the statute provides sufficient guidance as to at least some conduct that is prohibited and standards for enforcement of that conduct, it will survive a facial challenge because it is not void in all its applications. *Hoffman Estates*, 455 U.S. at 497. Under the higher standard, the question becomes whether vagueness so permeates the text that the statute cannot meet these requirements in most applications; and thus, this standard provides for the possibility that some applications of the law would not be void, but the statute would still be invalid if void in most circumstances. *See Kolender*, 461 U.S. at 358 n.8.

### The NCIAA is unconstitutionally vague as to criminal enforcement, but is constitutional as to civil enforcement

Having established the proper framework for analyzing a facial vagueness challenge, we now apply it to the present case. In doing so, we first consider whether the NCIAA is unconstitutionally vague for criminal enforcement. Concluding that it is, we next determine whether the district court properly severed the criminal provision from the statute. After concluding that severance was proper, we address whether the NCIAA passes a facial challenge for civil enforcement.

#### The NCIAA is unconstitutionally vague for criminal enforcement

Because the district court severed the criminal portion of the statute, to determine the proper standard to apply to this facial challenge, we first address cross-appellant Chanos's contention that the district court erred in ruling that the criminal enforcement of the statute is unconstitutionally vague. If Chanos's cross-appeal is successful, then the statute would include criminal penalties. As a result, we apply the higher standard of whether vagueness permeates the statute's text to analyze the cross-appeal.[7]

We conclude that vagueness permeates the NCIAA text in that it fails to provide sufficient notice of what conduct is prohibited and allows for arbitrary enforcement. With regards to both notice and ar-

---

[7]NRS 202.2483(7) states, "Health authorities, police officers of cities or towns, sheriffs and their deputies shall, within their respective jurisdictions, enforce the provisions of this section and shall issue citations for violations of this section pursuant to NRS 202.2492 [criminal penalties] and NRS 202.24925 [civil penalties]."

bitrary enforcement, the statute fails to adequately define to whom the Act is enforced against. While it is clear that a person cannot smoke in a restricted area, it is unclear if there is an obligation to affirmatively prevent smoking by a business owner, manager, or employee. The statute fails to explain whether business owners, such as appellants, have a responsibility to stop someone who is smoking in violation of the Act, and if so, what that responsibility entails. Consequently, we question whether it is sufficient, under the statute, to ask the person to stop smoking, or does the business owner have to demand that the person leave the premises, and if the person refuses to leave the premises, is the owner required to call the police? The statute fails to provide guidelines as to what action is required and how the statute is enforced, and therefore, it creates the possibility of arbitrary and discriminatory enforcement.

Vagueness also permeates the NCIAA's text by failing to define several terms included in the statute that do not have a plain meaning. These terms include ''smoking paraphernalia'' and ''large room.'' For example, as one court has recognized, the term ''smoking paraphernalia'' is too vague because ''the reasonable parameters of exactly what constitutes such equipment are unstated and potentially boundless.'' *Lexington Fayette Cty Food v. Urban Cty Gov*, 131 S.W.3d 745, 754 (Ky. 2004). The court reasoned that the term could include anything from cigarettes, cigars, and tools to make them, to air freshener and breath mints. *Id*. at 754-55. While it recognized that a fair assumption could be made that the statute covered cigarettes and cigars and did not cover air freshener and breath mints, the court stated that ''lying between those extremes . . . is a vast middle ground which is subject to characterization as lawful or unlawful in the discretion of the enforcing authorities.'' *Id*. at 756 (internal quotation and citation omitted).

Thus, we conclude that vagueness as to the criminal penalties so permeates the NCIAA that it cannot withstand constitutional due process scrutiny. Accordingly, the statute is unconstitutionally vague for criminal enforcement under the higher standard that applies for a facial challenge of a criminal statute, and we affirm the district court's conclusion that the statute's criminal provisions could not be constitutionally enforced. Having so concluded, we next address whether the district court properly severed the criminal enforcement provisions from the statute.

### The district court properly severed the criminal enforcement provisions

The district court determined that the statute was unconstitutionally vague when considered as a criminal statute, but not when viewed as only a civil statute. As a result, the district court severed

the portion of the statute that provided for criminal penalties.[8] Appellants argue that this was improper because the NCIAA was a ballot measure and there is no definitive way of knowing if the voters would still want the statute with the criminal portion removed. Additionally, appellants argue that the severance of the criminal provision was improper because that language is not vague, rather the statute as a whole is vague, and thus, the district court could not sever the criminal portion because that portion was not the unconstitutional part of the statute. Respondents counter that the district court properly severed the criminal penalties from the statute because the remainder of the statute stands without the offensive portion and it is clear that the voters would prefer the statute without criminal penalties as opposed to no statute at all, especially in light of the severance provision included in the NCIAA, codified as NRS 202.2483(11).[9] Respondents consequently argue that because the district court concluded that the criminal portion was unconstitutional, nothing prevented it from severing that portion.

Under the severance doctrine, it is "the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." *Rogers v. Heller*, 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001) (quotation omitted). This court has adopted a two-part test for severability: a statute is only severable if the remaining portion of the statute, standing alone, can be given legal effect, and if the Legislature intended for the remainder of the statute to stay in effect when part of the statute is severed.[10] *County of Clark v. City of Las Vegas*, 92 Nev. 323, 336-37, 550 P.2d 779, 788 (1976).

Appellants argue that severance is improper because the statute was passed as a ballot measure and with no legislative history there

---

[8]Specifically, the district court severed the words "NRS 202.2492 and" (the criminal penalties) from the statute.

[9]NRS 202.2483(11) expressly provides for severance of any unconstitutional section:

> The provisions of this section are severable. If any provision of this section or the application thereof is declared by a court of competent jurisdiction to be invalid or unconstitutional, such declaration shall not affect the validity of the section as a whole or any provision thereof other than the part declared to be invalid or unconstitutional.

[10]To support their respective positions, the parties relied on a three-part test from California case authority, which requires that the improper portion can only be severed if "it is grammatically, functionally and volitionally separable." *Jevne v. Superior Court*, 111 P.3d 954, 971 (Cal. 2005) (internal quotations omitted). The *Jevne* court outlines this test as follows:

> It is grammatically separable if it is distinct and separate and, hence, can be removed as a whole without affecting the wording of any of the mea-

is no way to determine whether voters would still want the statute if the criminal portions are severed. Appellants focus on this court's opinion in *Rogers* and primarily the dissenting opinion in *Nevadans for Property Rights v. Secretary of State*, 122 Nev. 894, 922-29, 141 P.3d 1235, 1253-58 (2006) (HARDESTY, J., concurring in part and dissenting in part), for support. Respondents counter that *Rogers* and *Nevadans for Property Rights* dealt with pre-ballot challenges to initiative petitions, unlike this case where the NCIAA has already passed the voting process and is now a statute. Thus, respondents argue, the severance provision that applies to statutes under NRS 0.020 governs.[11] Respondents also rely on *Nevadans for Property Rights'* majority opinion, which allowed severance, even pre-ballot. Appellants respond by arguing that the reasoning of *Rogers* is stronger in this case because of the fact that this is now law and cannot be amended by the Legislature until December 2009, based on the requirement in Article 19, Section 2(3) of the Nevada Constitution that an initiative cannot be amended for three years after passage.

In *Rogers*, this court declined to sever an initiative petition. 117 Nev. at 178, 18 P.3d at 1039-40. There, the petition sought to require that 50 percent of the projected revenue for the state be used for public education and imposed a new tax with a requirement that the new tax money be devoted solely to education. *Id.* at 174-75, 18 P.3d at 1037-38. The petition was ruled unconstitutional because the appropriation required was not covered by the new tax. *Id.* at 177, 18 P.3d at 1039. The proponents of the initiative asked the court to sever the 50-percent appropriation requirement and allow the remainder of the initiative to proceed. *Id.* The court rejected the argument that the initiative could be severed, even though it contained a severability clause. *Id.* at 177-78, 18 P.3d at 1039-40. The *Rogers*

---

sure's other provisions. It is functionally separable if it is not necessary to the measure's operation and purpose. And it is volitionally separable if it was not of critical importance to the measure's enactment.

*Id.* (internal quotations omitted). Although worded differently, the Nevada and California tests are essentially the same, in that after severance the statute must stand on its own and the removed portion must not be critical, *i.e.*, it was intended that the rest of the statute remain even without the severed portion.

[11]NRS 0.020 states as follows:

1. If any provision of the Nevada Revised Statutes, or the application thereof to any person, thing or circumstance is held invalid, such invalidity shall not affect the provisions or application of NRS which can be given effect without the invalid provision or application, and to this end the provisions of NRS are declared to be severable.

2. The inclusion of an express declaration of severability in the enactment of any provision of NRS or the inclusion of any such provision in NRS, does not enhance the severability of the provision so treated or detract from the severability of any other provision of NRS.

court held that ''[i]nitiative petitions must be kept substantively intact; otherwise, the people's voice would be obstructed.'' *Id.* at 177, 18 P.3d at 1039. The court continued, stating that ''initiative legislation is not subject to judicial tampering—the substance of an initiative petition should reflect the unadulterated will of the people and should proceed, if at all, as originally proposed and signed.'' *Id.* at 178, 18 P.3d at 1039-40.

In *Nevadans for Property Rights*, the court concluded that severance of the initiative petition was proper. 122 Nev. at 912-13, 141 P.3d at 1247-48. *Nevadans for Property Rights* involved a petition dealing primarily with eminent domain, but which also contained provisions regarding property rights. The *Nevadans for Property Rights* court concluded that the petition violated the single-subject requirement and was therefore unconstitutional. *Id.* at 909, 141 P.3d at 1245. The court determined, however, that the provisions concerning property rights could be severed and the remainder of the provision would satisfy the single-subject requirement. *Id.* at 913, 141 P.3d at 1248. In reaching this conclusion, the court held that severance would still preserve the primary purpose of the petition (eminent domain), that the severability provision included in the initiative demonstrated that the voters would still want the petition without the severed portion, and that severance would preserve the people's right to enact law through the initiative process. *Id.* at 909-13, 141 P.3d at 1245-48. The *Nevadans for Property Rights* court distinguished the *Rogers* case, stating that the petition in *Rogers* was not severable because it ''would have gutted the initiative's central component'' and that ''[n]o other portion of the initiative could have stood in the absence of this central component.'' *Nevadans for Prop. Rights*, 122 Nev. at 913, 141 P.3d at 1247. Thus, while severance was improper in *Rogers*, the petition in *Nevadans for Property Rights* could be properly severed because the severed portion did not destroy the central purpose of the initiative and the remainder of the initiative could stand alone.

Based on the *Rogers* and *Nevadans for Property Rights* holdings, especially the distinction set forth in *Nevadans for Property Rights* between its petition and the *Rogers* petition, we conclude that the district court properly severed the criminal penalty portion of the NCIAA. The portion severed was not the central component of the statute and the remainder of the statute, as explained below, can stand alone. Moreover, the NCIAA included a severability clause, which indicates that the initiative's proponents contemplated that should a constitutional challenge arise, the offending portion of the statute could be severed and the remaining portion could proceed and the smoking ban enforced.

Appellants also argue that severance is only permissible if the severed portion is unconstitutional on its own, citing among other cases, *Rogers*, in which the court stated that severance was used "to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." 117 Nev. at 177, 18 P.3d at 1039 (quotation omitted). Appellants insist that because imposing criminal penalties for violation of a smoking statute is not in and of itself unconstitutional, the criminal penalties cannot properly be severed, as severance would only be permitted if it was in fact unconstitutional to impose criminal penalties. Appellants' argument is refuted by *Nevadans for Property Rights*, however, in that there we severed portions of an initiative that were not unconstitutional on their own but that made the initiative unconstitutional and which, when severed, cured the initiative's unconstitutional defects. 122 Nev. 894, 141 P.3d 1235. The NCIAA falls under the *Nevadans for Property Rights* reasoning, in that, as explained below, the portion severed by the district court cured the statute's unconstitutional defect. Thus, the severed portion was in fact the unconstitutional portion of the statute and severance was permissible.

### *The NCIAA passes a facial vagueness challenge for civil enforcement*

Having concluded that the district court properly severed the criminal enforcement provisions from the NCIAA, we now address whether the statute passes a facial vagueness test for civil enforcement. Because the statute does not contain criminal provisions in its severed state and, as all parties agree, does not involve constitutionally protected activity, we review the statute under the lower standard of whether it is vague in all its applications.[12] We conclude that the statute's civil enforcement is not vague, and therefore, it survives appellants' facial constitutional vagueness challenge.

Under the lower standard test of whether the statute is vague in all its applications, the NCIAA is sufficiently clear if, in any application, it does not "(1) fail[ ] to provide notice sufficient to enable

---

[12]Appellants argue that the statute without the criminal provisions is still a quasi-criminal statute because it imposes fines, and therefore, the higher standard test should still apply. We reject this contention. The statute is not quasi-criminal as to the appellant business owners because it does not include any possibility of license revocation nor does it have a stigmatizing effect. *See Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 508 (5th Cir. 2001). While the fact that the statute imposes fines may be sufficient to constitute a quasi-criminal statute when applied to individuals, it is not sufficient when applied to appellants as business owners, *id.*, and appellants cannot rely on the application to others in a facial challenge when it is constitutional as applied to them. *Matter of T.R.*, 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003); *Hoffman Estates*, 455 U.S. at 495.

persons of ordinary intelligence to understand what conduct is prohibited" and does not "(2) lack[ ] specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and discriminatory enforcement." *Silvar*, 122 Nev. at 293, 129 P.3d at 685; *Hoffman Estates*, 455 U.S. at 498.

We conclude that the statute is not vague in all its applications and, therefore, survives a facial challenge for civil enforcement because there are very clear applications of the statute in which no one could reasonably question whether a particular act would violate the statute. For example, smoking is clearly prohibited in certain areas, including bars and restaurants where food is served. This prohibition is unquestionably enforceable against someone who is smoking inside these restricted areas and, thus, illustrates how the statute is not impermissibly vague in all its applications. Another example as to why the statute survives a facial challenge is that the statute is clear that certain businesses cannot allow smoking and must post no-smoking signs.[13] It cannot be reasonably disputed that this portion of the statute clearly outlines the requirements that a business owner prohibit smoking and post no-smoking signs. Once again, this requirement demonstrates that the statute is not unconstitutional in all its applications. Thus, under the lower level test of requiring appellants to show vagueness in all its applications, the statute is sufficiently clear to provide notice of what conduct is prohibited and adequate guidance to enforcement officials to avoid arbitrary or discriminatory enforcement.

While there may be uncertainty as to what affirmative actions, if any, a business owner must take if someone smokes within his or her business in violation of the statute, there is no question that the business owner is required to make his or her establishment non-smoking and post signs designating it as such. As the main restrictions of the Act are sufficiently clear to establish specific prohibited conduct that a reasonable person could understand and does not promote arbitrary enforcement, the statute survives a facial vagueness challenge.[14]

---

[13]The requirement to post no-smoking signs is outlined in NRS 202.2483(6):

6. "No Smoking" signs or the international "No Smoking" symbol shall be clearly and conspicuously posted in every public place and place of employment where smoking is prohibited by this section. Each public place and place of employment where smoking is prohibited shall post, at every entrance, a conspicuous sign clearly stating that smoking is prohibited. All ashtrays and other smoking paraphernalia shall be removed from any area where smoking is prohibited.

[14]In reaching this conclusion, we emphasize that this appeal involves a facial challenge to the statute. We note that the statute contains numerous defects that may be subject to as-applied challenges once the statute is enforced against a particular party, but it is improper in the context of a facial challenge review to

Therefore, under a facial challenge the statute is not unconstitutionally vague for civil enforcement because the general restrictions under the statute have clear, constitutional applications. Accordingly, we affirm the district court's ruling upholding civil enforcement of the statute.

## The NCIAA does not violate equal protection

Appellants argue that the NCIAA is unconstitutional because it violates the Equal Protection Clauses under the Fourteenth Amendment to the United States Constitution and Article 4, Section 21 of the Nevada Constitution. Equal protection allows different classifications of treatment, but the classifications must be reasonable. *State Farm v. All Electric, Inc.*, 99 Nev. 222, 225, 660 P.2d 995, 997 (1983), *overruled on other grounds by Wise v. Bechtel Corp.*, 104 Nev. 750, 766 P.2d 1317 (1988). While there are different levels of scrutiny that may apply under an equal protection analysis to determine if classifications are reasonable and therefore constitutional, here, both parties agree that smoking does not involve a fundamental right or a suspect class. Thus, the classifications are reasonable, and the statute is constitutional if there is a rational basis related to a legitimate government interest for treating businesses differently. *Arata v. Faubion*, 123 Nev. 153, 159, 161 P.3d 244, 248 (2007). This court is not limited, when analyzing a rational basis review, to the reasons enunciated for enacting a statute; if any rational basis exists, then a statute does not violate equal protection. *Id.* at 160, 161 P.3d at 249. Further, under a rational basis test, classifications must "apply uniformly to all who are similarly situated, and the distinctions which separate those who are included within a classification from those who are not must be reasonable, not arbi-

consider these hypothetical situations. For example, as noted above, under the language of the statute, uncertainty arises regarding whether the statute imposes upon business owners an obligation to stop a person who is smoking in violation of the statute. As another example, ambiguity concerning what is included as smoking paraphernalia under the statute may potentially provide a basis for an as-applied challenge.

While such arguments may be valid in an as-applied challenge, they are improper in a facial challenge to the statute under the lower level test of whether a statute is vague in all its applications. *Hoffman Estates*, 455 U.S. at 497. As the United States Supreme Court has stated, concerning facial challenges, "[e]xercising judicial restraint in a facial challenge frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation omitted). Additionally, the Supreme Court has recognized that "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451.

trary." *State Farm*, 99 Nev. at 225, 660 P.2d at 997. The classifications must also "bear[ ] a rational relationship to the legislative purpose sought to be effected." *Id.*

Appellants argue that the NCIAA violates equal protection because the NCIAA applies to businesses that hold a restricted gaming license but does not apply to gaming areas in those businesses that hold a nonrestricted gaming license. Appellants assert that this distinction violates equal protection because no rational reason exists to allow smoking in one place but not another based solely on what type of gaming license the business holds. Respondents counter by arguing that the gaming-license holders are not similarly situated and, therefore, can be treated differently, and the differing treatment in the statute is reasonable. While the district court did not resolve this issue, it was properly raised below and on appeal, and it is therefore necessary for us to address the issue.

A "nonrestricted gaming license" allows for, among other things, the operation of 16 or more slot machines or the combination of any amount of slot machines in connection with the operation of other games or sports pool. NRS 463.0177. A "restricted gaming license" only allows for the operation of 15 or fewer slot machines and no other types of gaming, and requires that the slot machines operation is "incidental to the primary business of the establishment." NRS 463.0189.

■■■■ ■■

There are a number of reasons why the different treatment of license holders passes equal protection requirements. First, in the case of nonrestricted gaming licensees, their primary business is gaming and their other operations and services are incidental to gaming; the other services offered by the nonrestricted license holder are still subject to the Act. The different treatment, thus, only applies to the main gaming areas, where minors are restricted from loitering pursuant to NRS 463.350. Restricted gaming licensees, however, offer gaming only incidentally to their other primary business, which makes it much more difficult, if not impossible, to provide an exclusion from the smoking ban for their gaming areas. Thus, it is rational to provide this exception to nonrestricted gaming licensees' large gaming areas but not to restricted gaming licensees' gaming areas, which are generally much smaller and likely too close to the other services provided by the establishment, where minors are not excluded.

Allowing different treatment on this basis is further supported by the fact that the NCIAA also provides an exception for stand-alone bars and taverns. Minors are prohibited in these businesses, NRS 202.030, just as they are prohibited from gaming areas. Thus, the purpose of the statute, to protect families and children from secondhand smoke, is not defeated by allowing an exception for large

gaming areas in nonrestricted licensees' businesses or in a stand-alone bar or tavern, as both places restrict access to minors. The same does not hold true to restricted gaming licensees' businesses because they generally offer other services, such as food service, for which families are more likely to patronize. *See* NRS 202.030(1) (allowing the presence of minors in establishments where alcohol is served in connection with offering meals at tables separate from the bar).

A second reason for different treatment stems from the businesses' primary functions. Nonrestricted gaming licensees are in the business of gaming, NRS 463.0177, whereas restricted gaming licensees are primarily in the retail and restaurant businesses, and thus, gaming is minimal to the primary purpose of the business. NRS 463.0189. Thus, while both types of business licensees contribute to the gaming economy, a business operating under a nonrestricted license contributes substantially more to the state's economy. Therefore, economics provides a rational basis for distinction in the statute. *See, e.g., Batte-Holmgren v. Com'r of Public Health*, 914 A.2d 996, 1015 (Conn. 2007) (recognizing, in a case challenging a smoking ban statute, that economic reasons can provide a rational basis for differing treatment). Thus, the differing treatment of these types of businesses under the statute is allowed to promote nonrestricted gaming licensees further success and continued substantial benefit to the state's economy. Whether these are the reasons why the classification was made is irrelevant, *Arata*, 123 Nev. at 160, 161 P.3d at 248, as they are rational reasons for allowing the classification.

As a result, the NCIAA does not violate equal protection. Because restricted gaming licensees are not similarly situated with nonrestricted gaming licensees, it is permissible to treat them differently if a rational basis exists. There are rational reasons for the differing treatment of nonrestricted and restricted license holders. Therefore, the statute does not violate equal protection.

*The NCIAA does not constitute a taking of private property for which compensation is required*

The last issue that we address in this appeal is whether the NCIAA constituted a governmental taking of private property for which appellant Nevada Tavern Owners Association (NTOA) argues requires compensation and, therefore, asserts that the statute is unconstitutional because it failed to provide for funding of the necessary appropriations to make the compensation payments to property owners, as required under Article 1, Section 8(6) of the Nevada Constitution. In particular, NTOA contends that prohibiting smoking is a per se regulatory taking of property owners' airspace and that

requiring the posting of "no smoking" signs is a physical invasion of property.

### Per se regulatory taking

This court has recognized two types of per se regulatory takings that occur: "when a government regulation either (1) requires an owner to suffer a permanent physical invasion of her property or (2) completely deprives an owner of all economical beneficial use of her property." *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 662, 137 P.3d 1110, 1122 (2006). NTOA argues that the NCIAA constitutes a permanent physical invasion of property.

NTOA relies on this court's opinion in *Sisolak* to support its argument. In *Sisolak*, this court held that ordinances that prevented Sisolak from using his airspace, because the airspace needed to be free from obstruction for plane flights, constituted a permanent invasion of the airspace for which Sisolak had to be compensated. *Id.* at 666-70, 137 P.3d at 1124-27. The *Sisolak* court explained that when determining if a regulation constitutes a permanent physical invasion, "a court must determine whether the regulation has granted the government physical possession of the property or whether it merely forbids certain private uses of the space." *Id.* at 662, 137 P.3d at 1122. NTOA argues that, similar to the situation in *Sisolak*, the NCIAA prevents business owners from using their airspace within their buildings and therefore constitutes a permanent invasion.

To the contrary, the *Sisolak* opinion refutes NTOA's argument, as the NCIAA only forbids certain uses of the space and does not give the government physical possession of the airspace. In *Sisolak*, the regulation completely prevented occupation of the airspace, whereas here, there is no such restriction in the occupation of the airspace, merely a limit on what can be done with it. Therefore, the NCIAA does not constitute a taking of the airspace under *Sisolak*.

### Physical invasion of property

NTOA also argues that the requirement to post a "no smoking" sign is a physical invasion of property that constitutes a taking of that property based on the United States Supreme Court case *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

In *Loretto*, the Supreme Court held that a regulation that required a landlord to permit a cable company to install cable television facilities on the property constituted a physical invasion requiring compensation. 458 U.S. at 438. The taking was the result of the installation of small cable boxes and wiring installed on the roof of the landlord's building. *Id.* The statute in question essentially

gave the cable company full control over the installation and maintenance of the cable box. NTOA argues that the requirement of posting a sign is similar to the requirement in *Loretto* of allowing the installation of cable boxes and, therefore, constitutes a taking. We do not agree.

The NCIAA does not give full control over the installation and maintenance of "no smoking" signs to a third party, which is what occurred in *Loretto*. The *Loretto* court recognized this distinction, stating that its holding

> in no way alters the analysis governing the State's power to require landlords to comply with building codes and provide utility connections, mailboxes, smoke detectors, fire extinguishers, and the like in the common area of a building. So long as these regulations do not require the landlord to suffer the physical occupation of a portion of his building by a third party, they will be analyzed under the multifactor inquiry generally applicable to nonpossessory governmental activity.

*Id.* at 440. The determination of whether the landlord maintained control over the property, or if that control was given to a third party, was an important aspect of determining if there was a per se taking. *Id.* at 440 n.19. The Court stated that if the statute at issue had only required a landlord to allow installation, without more, then a different question would be presented because the landlord would retain control over placement and other effects of the installation. *Id.* As the NCIAA does not give control over the installation or any portion of a person's property to a third party, it is distinguishable from *Loretto*, as that opinion itself recognized. Thus, NTOA's per se taking argument must fail.[15]

We therefore conclude that the NCIAA does not constitute a governmental taking of private property. Business owners still maintain possession and control over their property. The fact that they are subject to certain regulations does not result in the government tak-

---

[15]The conclusion that no taking is effected by requiring the posting of a sign is further supported by this court's *Sisolak* opinion, in which this court stated that most property rights "may be the subject of valid zoning and related regulations which do not give rise to a takings claim." *Sisolak*, 122 Nev. at 660 n.25, 137 P.3d at 1120 n.25. Further, the United States Supreme Court has held that "where an owner possesses a full bundle of property rights, the destruction of one strand of the bundle is not a taking" and that all land-use regulations will have some impact on property values, but "[t]reating them all as *per se* takings would transform government regulation into a luxury few governments could afford." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324, 327 (2002) (internal quotations omitted). Therefore, the NCIAA does not effect a taking of private property without compensation.

ing complete control over their airspace or building property. Thus, NTOA's taking argument is without merit and cannot serve as a basis for invalidating the NCIAA.

## CONCLUSION

The NCIAA provides sufficient definiteness to avoid a facial challenge under the lower level test of whether the statute is vague in all its applications but does not survive the higher test of whether vagueness permeates its text. Thus, we conclude that the statute is not unconstitutionally vague for civil enforcement, but it is unconstitutionally vague for criminal enforcement, and the district court properly severed the criminal enforcement provisions from the Act. In addition, we conclude that the NCIAA does not violate equal protection, as there are rational bases for the classifications made within the statute. Finally, the NCIAA does not constitute a governmental taking of private property. Accordingly, we affirm the district court's judgment.

DOUGLAS, SAITTA, and PICKERING, JJ., concur.

GIBBONS, J., concurring:

I concur with the majority. However, I wish to emphasize that in my view, this opinion does not preclude aggrieved parties, such as the appellants, from challenging the NCIAA on an "as applied" basis. As an example, in the event an aggrieved party receives a civil sanction, I make no conclusion as to whether the NCIAA provides sufficient guidance as to what an aggrieved party's obligation is in the event a patron chooses to smoke in the aggrieved party's establishment.

CHERRY, J., concurring in part and dissenting in part:

While I concur with the majority's conclusion that the criminal provisions of Nevada's Clean Indoor Air Act (NCIAA) are unconstitutional, the majority's equal protection analysis of the civil provisions, concluding that there are rational reasons for allowing different treatment of businesses, misses the mark. In my opinion, even if the criminal provisions are severed, the statute is unconstitutional as it violates equal protection. Therefore, I dissent from the portion of the majority opinion that upholds the statute's civil provisions.

The NCIAA's purpose is to protect families and children from secondhand smoke. The NCIAA creates a distinction in treatment based primarily on whether a business holds a restricted or nonrestricted gaming license, but that distinction is arbitrary. Allowing smoking in the gaming areas of nonrestricted gaming licensees but not in restricted gaming licensees' gaming areas has no rational basis and is contrary to the statute's purpose.

The majority concludes that the exception for smoking in a nonrestricted gaming license business is rational because it is limited to its gaming areas, a place where minors are prohibited and adults can avoid. But the majority ignores the reality that the dangers of secondhand smoke are the same whether the smoking is in a nonrestricted or restricted gaming licensee's business. To me, the exclusion for nonrestricted licensees that allows smoking only in the gaming areas is spurious at best, as the secondhand smoke is not confined within those boundaries merely because the actual smoking occurs only there. The secondhand smoke carries beyond the gaming areas and still impacts families and children that are located beyond those areas. It makes no difference that minors are not permitted in the gaming areas where the smoking is permitted. The mere fact that minors are precluded from inside the gaming areas does not mean that they are not inside nongaming areas, and minors and families are often more likely to be inside a nonrestricted gaming licensee casino than inside a restricted gaming licensee bar or tavern that happens to sell food. Thus, the statute creates an arbitrary distinction that is not rationally related to the purpose of the statute.

Further, the majority attempts to justify its conclusion by determining that gaming is incidental to the business of a restricted gaming licensee's business, and therefore, a restricted license holder generates less gaming revenue for state economic purposes. Economics does not provide a rational basis for different treatment. First, both types of licensees have gaming and, thus, contribute to the revenues generated by the state from the gaming profits. Second, simply because a nonrestricted gaming licensee may generate more tax revenue from gaming than a restricted gaming licensee does not provide a rational basis for different treatment in the context of protecting families and children, because the secondhand smoke will have the same detrimental effect regardless of the amount of tax revenue generated from the business.

The distinctions that the majority makes for upholding the civil portion of the statute do not bear a rational relation to the statute's purpose, and the NCIAA is unconstitutional because it violates equal protection. Accordingly, I dissent from the majority's decision to uphold the civil enforcement of the NCIAA.