136 Nev., Advance Opinion 74

IN THE SUPREME COURT OF THE STATE OF NEVADA

SILVERWING DEVELOPMENT, A
NEVADA CORPORATION; AND J.
CARTER WITT, III, AN INDIVIDUAL,
Appellants,
vs.
NEVADA STATE CONTRACTORS
BOARD,
Respondent.

No. 79134

**FILED**

DEC 03 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S.Young
DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a matter before the Nevada State Contractors Board. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Affirmed.*

Hoy Chrissinger Kimmel Vallas P.C. and Michael S. Kimmel, Reno; Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno, for Appellants.

Allison Law Firm Chtd. and Noah G. Allison, Las Vegas, for Respondent.

Laxalt & Nomura, Ltd., and Holly S. Parker, Reno, for Amici Curiae Builders Association of Northern Nevada, Nevada Builders Alliance, and Reno & Sparks Chamber of Commerce.

Christensen James & Martin and Evan L. James and Laura J. Wolff, Las Vegas, for Amici Curiae Glaziers Labor-Management Cooperation Committee and Southern Nevada Painters and Decorators.

20 - 43718

McDonald Carano LLP and Philip M. Mannelly and Adam D. Hosmer-Henner, Reno,
for Amicus Curiae Construction Trade Associations.

BEFORE PARRAGUIRRE, HARDESTY and CADISH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

*INTRODUCTION*

NRS 624.220(2) requires respondent Nevada State Contractors Board to impose a monetary license limit on the amount a contractor can bid on a project. The limit is calculated with respect to "one or more construction contracts on a single construction site or subdivision site for a single client." NRS 624.220(2). Here, the Board lodged a complaint against appellant Silverwing Development and its owner, appellant J. Carter Witt, III (collectively Silverwing), alleging that Silverwing had improperly entered into contracts with contractors that exceeded the contractors' license limits in conjunction with several of Silverwing's condominium development projects. A hearing officer determined that "subdivision site" in NRS 624.220(2) refers to the general location of a subdivision, rather than a particular location within a subdivision, such that the multiple contracts that Silverwing entered into with each contractor for work within the condominium development project should be added together to determine whether the contractors' license limits had been exceeded. The hearing officer consequently sustained the Board's complaint and fined Silverwing. Silverwing petitioned for judicial review, which the district court denied.

Silverwing appeals, arguing primarily that "subdivision site" in NRS 624.220(2) is unconstitutionally vague. We conclude that "subdivision site" is commonly used in the planning-and-zoning context to mean the general location of a subdivision. Consequently, that term as it is used in NRS 624.220(2) is not unconstitutionally vague. And because we agree with the Board's construction of that term, we necessarily affirm the district court's denial of Silverwing's petition for judicial review.

*FACTS AND PROCEDURAL HISTORY*

As indicated, NRS 624.220(2) requires the Board to impose a monetary license limit on the amount a contractor can bid on a particular project. The limit applies with respect to "one or more construction contracts on a single construction site or *subdivision site for a single client*." NRS 624.220(2) (emphasis added). The italicized portion of the statute was added in 1967, *see* 1967 Nev. Stat., ch. 535, § 2, at 1593, and although there is no recorded legislative history regarding the meaning of the added language, both Silverwing and the Board agree that the primary purpose of NRS 624.220(2)'s monetary limit is to ensure that contractors have the financial solvency to pay their subcontractors, as well as to ensure that subcontractors have the financial solvency to complete their projects. In turn, NRS 624.3015(3) prohibits an entity such as Silverwing from knowingly hiring a contractor to perform work in excess of the contractor's license limit.

As these statutes pertain here, Silverwing developed three different condominium projects in Reno and Sparks between 2013 and 2017. For each project, Silverwing recorded a plat map describing the project as a "Condominium Subdivision." Each project comprised multiple, separate buildings, and Silverwing was required to obtain separate building permits and certificates of occupancy for each building. In 2016, the Board received

an anonymous complaint that one of Silverwing's contractors was exceeding its NRS 624.220(2) license limit, and one of the Board's investigators, Jeff Gore, began an investigation.

Mr. Gore's investigation revealed that Silverwing had entered into multiple contracts with its contractors within a given condominium development, none of which individually exceeded the contractors' respective license limits, but when added together did exceed those limits. For example, Silverwing entered into five separate contracts with ABC Builders, which had a license limit of $150,000, all for work at the same condominium development. One contract was for roughly $80,000, and the other four were for roughly $147,000 each. Consequently, the combined amount of the five contracts greatly exceeded ABC Builders' $150,000 license limit.

Based on Mr. Gore's findings, the Board filed a complaint against Silverwing alleging that Silverwing had committed 30 of the above-described violations. The Board eventually clarified that it believed each of Silverwing's three condominium development projects was a "subdivision site" under NRS 624.220(2). Silverwing answered the complaint by denying the allegations and arguing primarily that NRS 624.220(2) is unconstitutionally vague in violation of Silverwing's Fifth Amendment due-process rights under the United States Constitution.[1]

----

[1]Silverwing also argued that NRS 624.220(2) violated the United States Constitution's Equal Protection Clause and that, even if NRS 624.220(2) was constitutional, its condominium development projects were not actually "subdivisions" subject to NRS 624.220(2)'s license limit. Silverwing continues to make these same two arguments on appeal, which we summarily reject.

A hearing was held before an administrative law judge (ALJ), at which the Board's counsel put forth the Board's position that "subdivision site" in NRS 624.220(2) means a place where a subdivision is, i.e., the location of an entire subdivision. Silverwing's counsel reiterated Silverwing's belief that "subdivision site" is unconstitutionally vague because it could mean the location of an entire subdivision or an indeterminate location within a subdivision. In this respect, Silverwing's owner, Mr. Witt, testified that he viewed each individual building within each condominium development as its own separate "site" since each building required separate building permits and certificates of occupancy. He explained that the reason Silverwing had multiple contracts with a given contractor was because each contract pertained to a specific building.

Following the hearing, the ALJ issued a decision in which he sustained the Board's complaint, concluding that Silverwing violated NRS 624.220(2) by entering into multiple contracts with its contractors within a particular condominium development that, when added together, exceeded the contractors' license limits. He also determined that "subdivision site" is not unconstitutionally vague and that the Board's construction of that term was entitled to deference. The hearing officer imposed a $1,000 per-violation fine against Silverwing.

Silverwing petitioned for judicial review, which the district court denied, concluding that the hearing officer appropriately deferred to the Board's construction of "subdivision site." This appeal followed.

## DISCUSSION

"On appeal from a district court order denying a petition for judicial review, this court reviews an appeals officer's decision in the same manner that the district court reviews the decision." *City of Reno v. Yturbide*, 135 Nev. 113, 115, 440 P.3d 32, 34 (2019). "The construction of a

SUPREME COURT
OF
NEVADA

(O) 1947A

statute is a question of law, and independent appellate review of an administrative ruling, rather than a more deferential standard of review, is appropriate."[2] *Maxwell v. State Indus. Ins. Sys.*, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993). Relatedly, "[t]he determination of whether a statute is constitutional is a question of law, which this court reviews de novo." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009).

Silverwing contends that "subdivision site" in NRS 624.220(2) is unconstitutionally vague. "A law may be struck down as impermissibly vague for either of two independent reasons: '(1) if it fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if 'it is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Carrigan v. Comm'n on Ethics*, 129 Nev. 894, 899, 313 P.3d

---

[2]Although we defer to an agency's interpretation of its governing statutes if the interpretation is "within the language of the statute," *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013) (internal quotation marks omitted), Silverwing contends that no deference is owed here because the Board engaged in ad hoc rulemaking, in that the Board never promulgated any regulations defining "subdivision site" and proffered its definition of that term for the first time in the underlying proceedings. We agree with Silverwing that the Board cannot engage in ad hoc rulemaking and that no deference is owed to the Board's interpretation of "subdivision site." *Cf. Pub. Serv. Comm'n of Nev. v. Sw. Gas Corp.*, 99 Nev. 268, 273, 662 P.2d 624, 627 (1983) (recognizing that an agency engages in ad hoc rulemaking when its interpretation of a statute, even though directed at a single entity in the adjudication of a contested case, is of "major policy concern and . . . significance to all [similarly situated entities]"). However, we are not persuaded that the Board needed to formally define "subdivision site" in a regulation to enforce NRS 624.220(2) and its use of that term. *See State v. GNLV Corp.*, 108 Nev. 456, 458, 834 P.2d 411, 413 (1992) (recognizing that an agency need not promulgate a regulation in order to enforce a statute's plain meaning).

880, 884 (2013) (quoting *State v. Castaneda*, 126 Nev. 478, 481-82, 245 P.3d 550, 553 (2010)).

We are not persuaded that either of these standards is met. To the contrary, "subdivision site" has a common meaning in statutes, regulations, and ordinances relating to planning and zoning.[3] *See* 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* § 47:31 (7th ed. 2014) (recognizing the rule of statutory construction that "commercial terms in a statute relating to trade or commerce have their trade or commercial meaning"); *see also Yassin v. Solis*, 108 Cal. Rptr. 3d 854, 859 (Ct. App. 2010) (applying this rule); *Lawyers Sur. Corp. v. Riverbend Bank, N.A.*, 966 S.W.2d 182, 185-86 (Tex. Ct. App. 1998) (same); *Rest. Dev., Inc. v. Cananwill, Inc.*, 80 P.3d 598, 603 (Wash. 2003) (same). And as the Board points out, that common meaning is consistent with the Board's construction of NRS 624.220(2), i.e., "subdivision site" means the general physical location of a subdivision. *See, e.g.*, Md. Code Ann., Envir. § 9-514 (West 2014) (referring to "subdivision site" as the general location of a subdivision); Wash. Rev. Code Ann. § 58.17.120 (West 2004) (same); N.Y. Comp. Codes R. & Regs. tit. 10, § App.

---

[3]Although NRS 624.220(2) does not pertain to planning and zoning, "subdivision site" appears to be most prevalently used in the context of planning and zoning. Nevada's chapter pertaining to planning and zoning, NRS Chapter 278, does not use the phrase "subdivision site" but instead refers simply to a "subdivision." *See generally* NRS 278.320-.5695. Although NRS 278.320 defines "subdivision" by referring to land that is "divided or proposed to be divided into five or more lots, parcels, *sites*, units or plots" (emphasis added), we are not persuaded by Silverwing's argument that the inclusion of "sites" in that definition proves that "subdivision site" as it is used in NRS 624.220(2) means a particular location within a subdivision.

74-A (2020) (same); *see also* Redding, Cal., Code § 17.12.050 (2010) (referring to "subdivision site" as the general location of a subdivision); Iron County, Utah, Code § 16.12.020 (2000) (same); N.J. Admin. Code § 5:21-1.5 (2020) (using "subdivision" and "site" synonymously).

Consistent with this common usage, we conclude that "subdivision site" in NRS 624.220(2) plainly refers to the general physical location of a subdivision.[4] Consequently, the statute provides a person of ordinary intelligence fair notice that it is impermissible to exceed a contractor's license limit in a particular subdivision, and it provides an adequate standard to preclude the Board from enforcing it discriminatorily. The statute is therefore not unconstitutionally vague. *Carrigan*, 129 Nev. at 899, 313 P.3d at 884.

Silverwing contends that construing "subdivision site" to mean an entire subdivision is bad policy because a subdivision could comprise hundreds of homes and that a developer might be able to hire a contractor to do work on only a handful of homes before that contractor's license limit is exceeded. Silverwing also contends that such a construction is unfair because a contractor could do work contemporaneously for multiple developers within a subdivision, which would defeat NRS 624.220(2)'s purpose of ensuring contractors' solvency.[5] While we do not discount these

---

[4]And as the Board points out, Silverwing's own recorded plat maps for the projects refer to each particular project as the "site." Relatedly, Silverwing's plat maps belie Silverwing's contention that it did not intend for its projects to be "subdivisions" for purposes of NRS Chapter 278.

[5]The Board observes that allowing a contractor to perform work for multiple developers lessens the likelihood that the subcontractor will go out of business if the contractor does not get paid by a particular developer. This is a rational explanation for the Legislature's decision to permit work

arguments, we believe that they involve policy considerations that would be best addressed by the Legislature and the Board. In light of the foregoing, we affirm the district court's denial of Silverwing's petition for judicial review.

_____, J.
Parraguirre

We concur:

_____, J.
Hardesty

_____, J.
Cadish

---

for multiple developers, which defeats Silverwing's equal-protection argument. *See Flamingo Paradise Gaming*, 125 Nev. at 520, 217 P.3d at 559 ("This court is not limited, when analyzing a rational basis review, to the reasons enunciated for enacting a statute; if *any* rational basis exists, then a statute does not violate equal protection." (emphasis added)).