FRANK KEVIN BLACKBURN, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 58255

February 14, 2013 294 P.3d 422

*Almase Law Group, LLC*, and *Caesar V. Almase*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Steven B. Wolfson*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Danielle K. Pieper*, Deputy District Attorney, Clark County, for Respondent.

Before PICKERING, C.J., HARDESTY and SAITTA, JJ.

## OPINION

By the Court, PICKERING, C.J.:

In this appeal we address psychosexual evaluations and consider whether a risk assessment based on clinical judgment, in addition to psychological tests, comports with Nevada law. Because NRS 176A.110 and NRS 176.139 call for the use of clinical judgment in tandem with diagnostic tools, we affirm.

### I.

Appellant Frank Blackburn pleaded guilty to attempted sexual assault pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Before sentencing, John Pacult, a licensed social worker, performed a psychosexual evaluation of Blackburn as required by NRS 176.139.

Pacult interviewed Blackburn. During the evaluation, Pacult used four assessment tools: the Vermont Assessment of Sex-Offender Risk (VASOR); the Rapid Risk Assessment of Sexual Offender Recidivism (RRASOR); the STATIC-99; and the STATIC-2002 (collectively, actuarial tools). Each actuarial tool resulted in a different raw score. After categorization, these scores fell within a range predicting a low-to-moderate risk to reoffend. Additionally, Pacult considered various documents provided by the Division of Parole and Probation, including Blackburn's plea agreement, multiple police reports, and Blackburn's SCOPE and arrest records. Pacult also spoke with Blackburn's wife, his daughter, the author of his presentence investigation (PSI) report, and the physician who had treated Blackburn's bipolar disorder for ten years.

Pacult concluded that the risk assessment tools underestimated Blackburn's risk to reoffend, primarily because Blackburn had no prior criminal history. The offense dynamics, combined with

Blackburn's reported history of sexual and physical aggression and mental health issues, led Pacult to conclude that Blackburn had a high risk to reoffend.

Unhappy with Pacult's opinion, Blackburn filed a motion to strike the psychosexual evaluation and to order a new psychosexual evaluation and PSI report. The district court denied Blackburn's motion and sentenced him to prison. Blackburn appealed, and this court reversed and remanded for the district court to conduct an evidentiary hearing on whether Pacult's evaluation comported with currently accepted standards of assessment. *Blackburn v. State*, Docket No. 56246 (Order of Reversal and Remand, November 5, 2010).

As ordered, the district court held an evidentiary hearing. At the hearing, Blackburn's expert, Dr. Mark Chambers, testified that he did not dispute how Pacult utilized the actuarial tools, nor how he scored Blackburn. Instead, Dr. Chambers opined that Pacult violated NRS 176A.110 and NRS 176.139 by using clinical judgment to override the tool-generated findings.

Pacult also testified at the hearing. After stating that he had completed thousands of evaluations, he explained that he helped the Nevada Legislature craft the language of NRS 176A.110 and NRS 176.139, and was therefore familiar with those statutes. In his view, the statutes require the evaluator to use "all relevant documents," including victim statements and interviews with victims and their families, in addition to the actuarial tools.[1]

The district court ultimately held that the Pacult evaluation was proper because it was conducted using currently accepted standards of assessment pursuant to NRS 176.139. The court then reinstated the judgment of conviction and Blackburn appealed once again.

## II.

This court reviews questions of statutory interpretation de novo. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). Our analysis begins and ends with the statutory text if it is clear and unambiguous. *Id.*

NRS 176A.110(1)(a) provides that a court shall not grant probation to a person convicted of a sexual offense, including at-

---

[1]Though neither party questioned the appropriateness of a medical expert opining on the meaning of a statute, courts normally "exclude testimonial opinion on the state of the law." *United Fire Insurance Co. v. McClelland*, 105 Nev. 504, 509, 780 P.2d 193, 196 (1989); *cf. A-NLV Cab Co. v. State, Taxicab Authority*, 108 Nev. 92, 95, 825 P.2d 585, 587 (1992) (disapproving the use of a legislator's statement of opinion as a means of divining legislative intent or deciphering statutory text). In resolving the statutory construction issue at the heart of this appeal, we rely on the statutes' text and conventional principles of statutory interpretation, not the opinions of Dr. Chambers or Pacult.

tempted sexual assault, unless "the person who conducts the psychosexual evaluation [required by NRS 176.139] certifies in the report prepared pursuant to NRS 176.139 that the person convicted of the offense does not represent a high risk to reoffend based upon *a currently accepted standard of assessment.*" (Emphasis added.) Under NRS 176.139(3), the person who prepares this report "must use *diagnostic tools* that are *generally accepted* as being within the standard of care for the evaluation of sex offenders . . . ." (Emphasis added.) Additionally,

> 3. . . . the psychosexual evaluation of the defendant must include:
> (a) A comprehensive clinical interview with the defendant; and
> (b) A review of all investigative reports relating to the defendant's sexual offense and all statements made by victims of that offense.
> 4. The psychosexual evaluation of the defendant may include:
> (a) A review of records relating to previous criminal offenses committed by the defendant;
> (b) A review of records relating to previous evaluations and treatment of the defendant;
> (c) A review of the defendant's records from school;
> (d) Interviews with the defendant's parents, the defendant's spouse or other persons who may be significantly involved with the defendant or who may have relevant information relating to the defendant's background; and
> (e) The use of psychological testing, polygraphic examinations and arousal assessment.

NRS 176.139(3)-(4).

Blackburn emphasizes the phrase "currently accepted standard of assessment" and extracts the words "standard" and "assessment" from the rest of NRS 176A.110. Blackburn asserts that the word "standard" refers to an objective measurement that practitioners can quantify and use. He continues that an "assessment" is the testing used to predict an outcome, which in the field of psychology is limited to tools such as the VASOR, RRASOR, STATIC-99, and STATIC-2002.

Similarly, he maintains that a clinician's professional opinion is not a generally accepted diagnostic tool as required by NRS 176.139(3). He then argues that "diagnostic tools" must use standardized principles of measurement to be "generally accepted"— which again refers only to the VASOR, RRASOR, STATIC-99, STATIC-2002, and similar actuarial tools.

We disagree. Blackburn's approach focuses on a single phrase in NRS 176A.110 to the exclusion of its remaining text and that of its associated statute, NRS 176.139. This violates the basic rule of statutory interpretation that holds that statutes "must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Butler v. State*, 120 Nev. 879, 892-93, 102 P.3d 71, 81 (2004) (internal quotations omitted). " 'A statute cannot be dissected into individual words, each one being thrown onto the anvil of dialectics to be hammered into a meaning which has no association with the words from which it has violently been separated.' " 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:5 n.10 (7th ed. 2008) (quoting *Bertera's Hopewell Foodland, Inc. v. Masters*, 236 A.2d 197, 204 (Pa. 1967), *overruled on other grounds by Goodman v. Kennedy*, 329 A.2d 224, 231 (Pa. 1974)).

Examining the words that precede the phrase "standard of assessment" in NRS 176A.110 reveals that the statute does not contemplate a single acceptable standard of assessment. The statute allows a professional to make his or her assessment "based upon *a* currently accepted standard of assessment." NRS 176A.110(1)(a) (emphasis added). If the word "a" in this statute were "the," then the statute might indicate only a single standard exists. The sentence as written, however, requires only that the basis of the psychosexual report be some currently accepted standard that satisfies the requirements of NRS 176.139.

NRS 176.139(3) defines what the evaluation *must* include, NRS 176.139(4) sets forth what the evaluation *may* include, and NRS 176.139(5) indicates that the person conducting the evaluation *must* be given access to all the records needed to conduct the evaluation. Psychological testing is one factor that *may* be included in an evaluation, NRS 176.139(4)(e), but the plain meaning of "may" does not indicate that actuarial tools are the only generally accepted diagnostic tools or standards of assessment that an evaluator can use. *See Butler*, 120 Nev. at 893, 102 P.3d at 81 (" 'May,' as it is used in legislative enactments, is often construed as a permissive grant of authority . . . ."). Further, Blackburn's argument that actuarial tools are the only valid source of information would make the other articulated sources in NRS 176.139(3)-(5) superfluous. This approach is inconsistent with the rule against reading statutes in a way that makes some of their words or phrases superfluous. *Butler*, 120 Nev. at 892-93, 102 P.3d at 81.

Even taken alone, the term "diagnostic tools" used in NRS 176.139(3) cannot be construed to mean only actuarial tools be-

cause "words that have a technical or special meaning are presumed to carry their technical or special meaning." *Savage v. Pierson*, 123 Nev. 86, 94, 157 P.3d 697, 702 (2007). In the context of mental health care, there are an "enormous number of psychometric instruments commercially available," all of which constitute diagnostic tools. Thomas A. Powell & John C. Holt, *Forensic Psychological Evaluations: The Methods in Our Madness*, 31 Vt. Bar J., no. 4, 2005, at 40. We acknowledge that mental health professionals are increasingly dependent on actuarial tools. However, "[e]valuators should review as much existing documentation on point as is available, such as prior mental health records, school reports, and hospitalization files. This limits over-reliance on psychological testing or clinical interviewing as the only sources for findings and conclusions." *Id.* at 42. Therefore, the technical term "diagnostic tools," when understood in the proper context of mental health, does not refer exclusively to actuarial tools.

Thus, NRS 176A.110 and NRS 176.139 do not mandate reliance on actuarial tools alone, and a clinician may rely on his or her professional opinion in conducting a psychosexual evaluation. When a clinician's professional opinion departs from the quantifiable test results, as here, the district court should acknowledge the discrepancy and make specific findings about the deviation in its determination of whether a psychosexual evaluation is based upon a currently accepted standard of assessment.

### III.

Next, we consider whether the district court abused its discretion in accepting Pacult's evaluation of Blackburn in making its sentencing determination. *See Parrish v. State*, 116 Nev. 982, 989, 12 P.3d 953, 957 (2000). An appellant must show that the district court relied solely on impalpable or highly suspect evidence to render the court's sentencing decision invalid. *See Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

Before a district court can accept a psychosexual evaluation, it has an obligation to determine whether the evaluator was qualified under NRS 176.139(2) and whether the evaluation is based upon currently accepted standards of assessment. In making these determinations, the court also must articulate specific findings so that this court can properly review its reasoning. *See Webb v. Shull*, 128 Nev. 85, 93, 270 P.3d 1266, 1271 (2012).

Here, Pacult, a licensed social worker, demonstrated his qualifications to perform psychosexual evaluations, *see Austin v. State*, 123 Nev. 1, 2, 151 P.3d 60, 60 (2007), and the district court cor-

rectly sought guidance in NRS 176.139. The court erred, however, by failing to make specific findings regarding the justification offered for Pacult's deviation from the psychological test results. Despite this omission, the district court did not abuse its discretion because the record supports its decision.

As the district court found, Pacult's evaluation included the mandatory items articulated in NRS 176.139(3)(a) and (b). Pacult also utilized additional information, as allowed by NRS 176.139(4), and as discussed above, evaluators should review as much existing documentation as is available to ensure accuracy. Although Pacult deviated from the test-based results, his ultimate assessment was based on a detailed document review and Pacult's extensive professional expertise. Further, Blackburn's expert witness, Dr. Chambers, did not claim that actuarial tools are the only acceptable method of assessment or that Pacult's evaluation fell below the standard of care required for psychosexual evaluations. In fact, Dr. Chambers acknowledged that clinical judgment is the only way to synthesize multiple actuarial scores into a single risk to reoffend. More notably, Dr. Chambers also admitted that deviation from standardized tests may be warranted, particularly when the actuarial tools do not adequately address important variables—as Pacult found was the case here. Thus, we conclude that the evidence in the record supports the district court's decision to deny Blackburn's request for a new psychosexual evaluation and to reinstate the judgment of conviction.

For these reasons, we affirm.

HARDESTY and SAITTA, JJ., concur.