# IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTOPHER E. PIGEON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67083

FILED

DEC 0 1 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of open or gross lewdness, aggravated stalking, luring a child with the intent to engage in sexual conduct, attempted first-degree kidnapping, burglary, unlawful contact with a child, and two counts of prohibited acts by a sex offender. Eighth Judicial District Court, Clark County; Douglas Smith, Judge. We affirm the judgment as to the convictions for unlawful contact with a child and one count of prohibited acts by a sex offender, but we reverse as to the remaining convictions and remand for a new sentencing hearing.

*Competency to stand trial*

Appellant Christopher Pigeon argues that the district court erred in finding him competent to stand trial. Pigeon asserts that he was not competent to stand trial because he suffers from chronic paranoid schizophrenia with narcissistic personality with delusions of grandeur and was not taking antipsychotic medication. To be competent to stand trial, a person must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United*

17-41371

*States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted); *see Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); NRS 178.400 (setting forth Nevada's competency standard); *Calvin v. State*, 122 Nev. 1178, 1182, 147 P.3d 1097, 1099-1100 (2006) (holding that Nevada's competency standard conforms to the standard announced in *Dusky*). The district court's competency findings will not be disturbed on appeal if they are supported by substantial evidence. *Calvin*, 122 Nev. at 1182, 147 P.3d at 1099.

Shortly after he was indicted on the criminal charges in this case, Pigeon was referred to Lake's Crossing for a competency evaluation. There, he was evaluated by Dr. Bradley, a psychiatrist, as well as two other doctors, all of whom found him to be competent to stand trial. Upon Pigeon's return from Lake's Crossing, the district court held a competency hearing, at which Dr. Bradley testified that Pigeon was not exhibiting any delusions, though he had been diagnosed with chronic schizophrenia paranoid type with a personality disorder and was not currently taking medication for the mental illness. Dr. Bradley further testified that he discussed with Pigeon the nature of the charges, the specific allegations against him, and his understanding of the legal process and court system, and that Pigeon understood the charges and legal process. Dr. Harder, a defense expert, also testified at the competency hearing and opined that Pigeon's delusions interfered with his ability to adequately consult with counsel. Although Dr. Harder's opinion arguably conflicted with Dr. Bradley's, it was within the district court's province to assign greater weight to Dr. Bradley's opinion,

particularly given that Dr. Bradley spent more time with Pigeon and his opinion of competency was supported by two other doctors from Lake's Crossing. *See United States v. Hoskie*, 950 F.2d 1388, 1394 (9th Cir. 1991) (discussing when a district court may credit findings of a government expert over those of a defense expert). Therefore, we conclude that substantial evidence supports the district court's competency decision. Moreover, Pigeon has failed to provide us with the other evidence available to the district court, including the evaluations by two other doctors who found Pigeon competent, and thus cannot demonstrate that the decision should be overturned.[1]

*Competency to waive the right to counsel and represent self at trial*

Pigeon contends that he was incompetent to waive his right to counsel and represent himself at trial, given that he suffered from paranoid schizophrenia with delusions of grandeur, he was not taking antipsychotic medication, and he was facing serious charges and a sentence of life without the possibility of parole.

The Sixth Amendment to the United States Constitution grants a criminal defendant the right to represent himself and conduct his own defense at trial. *Faretta v. California*, 422 U.S. 806, 807 (1975). To exercise

---

[1]Pigeon also complains that the district court judge failed to enter any specific written findings regarding the competency determination. Pigeon cites no authority requiring the district court to enter written findings of fact, and the competency statutes do not expressly require specific findings. *See, e.g.*, NRS 178.460(3) (requiring only that the judge "make and enter a finding of competence or incompetence" within 10 days after the competency hearing). Furthermore, he does not argue that the district court failed to apply the correct legal test for competency, nor does he explain how he was prejudiced by the court's failure to expressly state the rationale for its competency decision.

 

this right, the defendant must knowingly and intelligently waive his right to counsel and assume the risks of self-representation. *Id.* at 835. Thus, when a criminal defendant insists on representing himself at trial, the trial court must "apprise the defendant fully of the risks of self-representation and of the nature of the charged crime so that the defendant's decision is made with a clear comprehension of the attendant risks." *Hymon v. State*, 121 Nev. 200, 212, 111 P.3d 1092, 1101 (2005) (internal quotation marks omitted); *see Faretta*, 422 U.S. at 835. A waiver of counsel will be valid when "it is apparent from the record that the defendant was aware of the dangers and disadvantages of self-representation." *Hymon*, 121 Nev. at 213, 111 P.3d at 1101 (internal quotation marks omitted).

Here, the district court held a *Faretta* canvass and apprised Pigeon of the risks of self-representation and the nature of the charged offenses. Pigeon does not contend that he was unaware of the dangers and disadvantages of self-representation. Rather, he contends that the district court should have required him to proceed with counsel because he was mentally ill and his delusions prevented him from being able to present a viable defense. For this, he relies on *Indiana v. Edwards*, 554 U.S. 164, 174 (2008). In *Edwards*, the Supreme Court held that the United States Constitution allows, but does not require, a State to deny self-representation to a defendant who is severely mentally ill but deemed competent to stand trial. *Id.* at 167.

Under our existing case law, a defendant has an *"unqualified* right to represent himself at trial so long as his waiver of counsel is intelligent and voluntary." *Tanksley v. State*, 113 Nev. 997, 1000, 946 P.2d 148, 150 (1997) (emphasis added and internal quotation marks omitted). We have not adopted the discretionary option offered by *Edwards* and the

parties do not frame a test or offer sufficient guidance for evaluating whether the district court properly exercised its discretion under *Edwards*. Because the district court correctly canvassed Pigeon under current Nevada law, and the record reflects that Pigeon was competent and that his waiver was knowing, intelligent, and voluntary, we conclude the district court did not abuse its discretion in granting Pigeon's request to represent himself and waive his right to counsel. *See Hooks v. State*, 124 Nev. 48, 55, 176 P.3d 1081, 1085 (2008) (explaining that this court considers the record as a whole and gives deference to the district court's decision regarding self-representation).

*Sufficiency of the evidence*

Pigeon next argues that insufficient evidence supports his convictions for open or gross lewdness, aggravated stalking, luring a child with the intent to engage in sexual conduct, attempted first-degree kidnapping, and burglary. In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether sufficient evidence was presented to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As explained below, we agree that insufficient evidence supports these convictions and we therefore reverse these convictions.

*Lewdness*

Pigeon contends that there was insufficient evidence that he committed open and gross lewdness because the surveillance video allegedly depicting him masturbating was not shown to the jury and the detective's testimony about what he saw on the surveillance video did not

 

prove lewdness. We agree that the State did not present sufficient evidence of this charge.

The evidence supporting the lewdness offense consisted almost entirely of the detective's description of what he recalled having seen on the surveillance video from the mini-mart. The State presented no other witnesses and no physical evidence. The detective testified that he watched Pigeon on video "place his hands in his pockets and pull at his genitals and his groin area while he was staring in the direction of [C.C.]." The detective testified that this lasted for "a few seconds at least," and opined that Pigeon was masturbating rather than adjusting himself. We conclude that this testimony alone was insufficient for a rational juror to reasonably infer that Pigeon engaged in a lewd act in public. *See* NRS 201.210; *Berry v. State*, 125 Nev. 265, 281-82, 212 P.3d 1085, 1096 (2009) (explaining meaning of lewdness), *abrogated on other grounds by State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010). Accordingly, we reverse the conviction for open or gross lewdness (count 5) for insufficient evidence.

*Aggravated Stalking*

Pigeon contends that there was no evidence presented at trial that he ever threatened C.C. in any way, which is an essential element of the offense of aggravated stalking. We agree.

NRS 200.575(1) provides that a person commits the crime of stalking when he "willfully or maliciously engages in a course of conduct that would cause a reasonable person," and "actually causes" the victim, "to feel terrorized, frightened, intimidated, [or] harassed." Aggravated stalking consists of the crime of stalking, plus "threaten[ing] the person with the intent to cause the person to be placed in reasonable fear of death or substantial bodily harm." NRS 200.575(2).

The evidence showed that Pigeon followed C.C. on the bus to the mini-mart and to school three days in a row. On the second day, he stepped into her path, touched her arm, and told her she was pretty. When she told him to leave her alone and walked away from him, Pigeon nevertheless followed her and then followed her again the next day. Although this evidence was sufficient for a rational juror to find that Pigeon committed stalking—i.e., his course of conduct would cause a reasonable person to feel frightened or harassed, and in fact, as C.C. testified to, actually caused her to feel frightened—it was insufficient to support the jury's finding that Pigeon committed *aggravated* stalking. The State presented no evidence that Pigeon threatened C.C. "with the intent to cause [her] to be placed in reasonable fear of death or substantial bodily harm." NRS 200.575(2). Accordingly, we reverse the conviction for aggravated stalking (count 2) for insufficient evidence.[2]

*Luring a child with intent to engage in sexual conduct*

Pigeon contends that there was insufficient evidence to support the conviction for luring a child with the intent to engage in sexual conduct, because he never lured or attempted to lure C.C. anywhere and there was no evidence that he intended to have sex with her when he approached her and talked to her. We agree.

A person commits the felony offense of "luring a child" if:

the person knowingly contacts or communicates with or attempts to contact or communicate with:

---

[2]The State has not asked us to reduce the offense to stalking through the "direct remand rule." *See generally Shields v. State*, 722 So. 2d 584, 585-86 (Miss. 1998). We decline to employ that rule sua sponte, particularly as this court has not explicitly addressed it in a published decision.

  

(b) Another person whom he or she believes to be a child . . ., regardless of the actual age of that other person, with the intent to solicit, persuade or lure the person to engage in sexual conduct.

NRS 201.560(1), (5).

The State alleged that Pigeon committed the crime of luring a child with the intent to engage in sexual conduct in the following manner: "by Defendant following said [minor] to her school and/or a convenient store and interacting with said minor on multiple occasions, Defendant possessing the intent to engage in sexual conduct with the child or to cause the child to engage in sexual conduct." Although Pigeon admitted to being sexually interested in the victim, there was no evidence from which a rational juror could reasonably infer that his contact and communication with the victim was made with the intent to engage in sex at that time. His comments to her were not of an overtly sexual nature and he did not attempt to lure her anywhere. Therefore, we conclude that there was insufficient evidence to support the conviction for luring a child. Accordingly, we reverse this conviction (count 3).

*Attempted first-degree kidnapping*

Pigeon argues that there was insufficient evidence to support the charge of attempted first-degree kidnapping because there was no evidence that he had the intent to kidnap C.C. or that he took any step toward accomplishing the act. We agree.

NRS 200.310(1), first-degree kidnapping, makes it a crime for a person to "lead[ ], take[ ], entice[ ], or carr[y] away or detain[ ] any minor with the intent to keep, imprison, or confine the minor from his or her parents, guardians, or any other person having lawful custody of the minor, or with the intent to hold the minor to unlawful service, or perpetrate upon the person of the minor any unlawful act." NRS 193.330(1) defines

"attempt" as an "act done with the intent to commit a crime, and tending but failing to accomplish it."

The evidence shows that Pigeon went onto the school grounds on Friday afternoon around the time that the students were dismissed for the day. Pigeon admitted that he went to the school to see C.C. Although the State argued that Pigeon intended to take her away from the school and have sex with her, there is no evidence from which a rational juror could reasonably infer that intent. Pigeon did not have any restraining materials or means of transportation, and his mere presence at the victim's school on a Friday afternoon did not evidence an intent to kidnap her. *See Darnell v. State*, 92 Nev. 680, 682, 558 P.2d 624, 625-26 (1976) (holding that an attempt requires that the defendant have an intent to commit the crime and "take a direct but ineffectual act toward the commission of the crime"). Thus, we reverse the conviction for attempted first-degree kidnapping (count 1) for insufficient evidence.

*Burglary*

Pigeon contends that the burglary charge, which was alleged in the indictment as his entering the mini-mart with the intent to commit battery and/or kidnapping and/or luring a minor, is not supported by any evidence. He asserts that the evidence only shows that he entered the store to watch C.C. and at one point he told her that she looked nice, but there was no physical contact with her or any attempt to kidnap or lure the victim. *See* NRS 205.060(1). As discussed above, there is insufficient evidence of attempted kidnapping and luring a minor. As for the theory that Pigeon entered the store to commit battery, the State points only to evidence showing that he had touched C.C. outside of the store. Although the State contends that he therefore likely intended to touch her again inside the

store, this is pure speculation given that he did not immediately approach her when he entered the store and he left the store without touching her. Thus, the evidence does not demonstrate that he entered the store with that intent. Accordingly, we reverse the conviction for burglary (count 4) for insufficient evidence.

*Redundant convictions*

Pigeon argues that his two convictions for prohibited acts by a sex offender are redundant and violate double jeopardy principles because he committed a single continuous crime—failing to update his address as a sex offender from January 7, 2013 (48 hours after he moved from his registered address and became homeless), through May 17, 2013 (the date of his arrest). He contends that, because he was homeless during that entire period of time and had no new fixed address, his conduct of failing to notify the authorities that he was homeless and no longer living at his registered address constituted only one violation of NRS 179D.470. The State contends that the convictions encompassed two separate offenses: Pigeon's failure to update his address and information within 48 hours after moving from his registered address in January 2013, and his failure to update his address for the period between April 22 and May 17, 2013, when he was staying at St. Vincent's shelter or his storage unit. The State argues that NRS 179D.470 allows a conviction for each time a sex offender fails to update his information upon a change of address or location, and thus Pigeon's convictions are not redundant.

The issue raised here is whether Pigeon's failure to update his address constitutes a single violation of NRS 179D.470 for the entire period in which he was not in compliance with the statute, or multiple violations for each time he changed his address without properly informing the

 

appropriate agency. This presents a question of the allowable "unit of prosecution" under the criminal statute—an issue that this court analyzes in the context of redundancy, not double jeopardy. *See Washington v. State*, 132 Nev., Adv. Op. 65, 376 P.3d 802, 806 (2016); *Castaneda v. State*, 132 Nev., Adv. Op. 44, 373 P.3d 108, 110 (2016). Determining the appropriate unit of prosecution allowed under a criminal statute involves statutory interpretation. *Washington*, 132 Nev., Adv. Op. 65, 376 P.3d at 806; *see Wilson v. State*, 121 Nev. 345, 355, 114 P.3d 285, 292 (2005) (explaining that "a claim that convictions are redundant stems from the legislation itself"). Statutory interpretation focuses on the plain language of the statutory text. *Blackburn v. State*, 129 Nev. 92, 95, 294 P.3d 422, 425 (2013). Statutes are to be "construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Id.* at 97, 294 P.3d at 426 (internal quotation marks omitted).

The record indicates that Pigeon was convicted twice under subsection 1 of NRS 179D.470. The plain language of subsection 1 requires a sex offender to notify law enforcement of his "change in status" within 48 hours after he changes the "address at which he or she resides." As Pigeon readily concedes, he violated this statutory provision on January 7 by moving out of his 200 South 8th Street address and failing to notify law enforcement within 48 hours after the move. The question for us to decide is whether Pigeon violated this statutory provision again by failing to notify law enforcement when he was staying at St. Vincent's or his storage unit. The answer turns on the meaning of subsection 1's language, "the address at which he or she resides." The term "address" is not defined in the sex offender registry statutes, and the statutory definition of "resides" ("the place where an offender resides," NRS 179D.090) is not helpful. However,

when read in tandem with subsection 3, it is clear that the "address at which he or she resides" in subsection 1 means "fixed residence." *See* NRS 179D.470(3) (requiring a sex offender without a "fixed residence" to update law enforcement every 30 days of the location where he habitually sleeps or takes shelter). Thus, if a sex offender has a fixed residence and then moves from it, he violates subsection 1 if he does not report the move within 48 hours. If the offender becomes homeless and does not have a new fixed residence, he is no longer subject to the 48-hour requirement under subsection 1 but instead must comply with subsection 3's 30-day requirement if he changes the location where he sleeps. Here, Pigeon violated subsection 1 when he moved from his fixed address without notifying law enforcement within 48 hours of the move. The State provides no specific argument on appeal about how Pigeon violated subsection 1 a second time during the charged period of April and May 2013, nor does the record indicate that he committed a second violation of subsection 1 when he remained homeless during that period.[3] Accordingly, we reverse the conviction on count 8.

*Prosecutorial misconduct*

Pigeon argues that the prosecutor committed misconduct during closing argument by telling the jury that it "would have been illegal for Christopher Pigeon, a 50 year old man, to marry [C.C.], a 12 year old little girl." Pigeon claims that this statement was false because NRS 122.025 allows for such a marriage with the consent of the minor's legal guardian and the district court. A review of the closing arguments shows that the State's comment, although incomplete, was accurate when

_____

[3]The State does not specifically argue and the record does not demonstrate that the second conviction was for a violation of subsection 3.

considered in the context of the evidence presented at trial. C.C.'s legal guardian testified that she had never talked to Pigeon, and it was reasonable to infer that she would never consent to a marriage between the girl and a 50-year-old stranger. Further, the jury was properly instructed as to the circumstances under which a 12-year-old child could marry and also was instructed that the State's arguments during closing were not evidence. Thus, to the extent the State's comment was misleading, it was harmless.

*Sentencing*

Pigeon argues that the habitual criminal adjudication was an abuse of discretion. First, relying on *Barrett v. State*, 105 Nev. 361, 775 P.2d 1276 (1989), he contends that because two of his prior convictions were originally misdemeanors that were enhanced to felonies, "it was error to apply the habitual statute, itself an enhancement provision, to these already enhanced misdemeanors." Pigeon's reliance on *Barrett* is unavailing, as the district court did not impose consecutive enhancements to the primary offenses here. *See id.* at 365, 775 P.2d at 1278 ("The sentencing court may enhance each *primary offense* pursuant to one enhancement statute." (emphasis added)).

Second, he challenges the habitual criminal adjudication on the basis that the prior convictions were non-violent and remote in time and thus did not show that he posed a serious threat to public safety. The fact that his three prior convictions were non-violent and/or remote in time did not render the adjudication erroneous. *See Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992) (explaining that the habitual criminal statute "makes no special allowance for non-violent crimes or for the remoteness of convictions; instead, these are considerations within the discretion of the

district court"); *see also* NRS 207.010. In deciding that habitual criminal adjudication was necessary, the district court not only considered Pigeon's three prior felony convictions, two of which were for lewdness, but also considered Pigeon's instant offenses, the psychosexual evaluation deeming Pigeon a high risk to sexually reoffend, Pigeon's statements indicating that he did not believe his conduct was very serious and he was still interested in marrying C.C., and his attempt to contact her even after she testified against him. *See LaChance v. State*, 130 Nev., Adv. Op. 29, 321 P.3d 919, 929 (2014) (explaining that a sentencing court has broad discretion in adjudicating a defendant as a habitual criminal and "may consider facts such as a defendant's criminal history, mitigation evidence, victim impact statements and the like" (internal quotation marks omitted)). Given the broad discretion afforded the district court in deciding whether to adjudicate a defendant a habitual criminal, we conclude the district court did not abuse its discretion in deciding to do so here.

Nevertheless, we are concerned that the district court, in imposing the most severe sentence available in this case under Nevada law, may have ascribed greater criminal intent to Pigeon than was actually demonstrated at trial. As discussed above, there was insufficient evidence at trial to support all but two of Pigeon's convictions, leaving him with only a single felony conviction (failure to update his address) and a single misdemeanor conviction (unlawful contact with a child). Because the convictions that we are reversing may have adversely influenced the sentences imposed on the remaining convictions, we remand for the district court to reconsider the sentences imposed on the two remaining convictions (counts 6 and 7). And, because we remand for resentencing, we do not

 

address Pigeon's claim that his sentences constitute cruel and unusual punishment.

For the foregoing reasons, we

ORDER the judgment of conviction AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. Douglas Smith, District Judge
Sandra L. Stewart
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk