140 Nev., Advance Opinion 30

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| STEPHEN SISOLAK, GOVERNOR OF NEVADA; AARON D. FORD, ATTORNEY GENERAL OF NEVADA; GEORGE TOGLIATTI, DIRECTOR OF THE NEVADA DEPARTMENT OF PUBLIC SAFETY; AND MINDY MCKAY, ADMINISTRATOR OF THE RECORDS, COMMUNICATIONS, AND COMPLIANCE DIVISION OF THE NEVADA DEPARTMENT OF PUBLIC SAFETY, Appellants, vs. POLYMER80, INC., Respondent. | No. 83999 |



FILED

APR 18 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order declaring unconstitutional and granting a permanent injunction against the enforcement of several statutes regulating unfinished firearms.[1]  Third Judicial District Court, Lyon County; John Schlegelmilch, Judge.

*Reversed.*

Aaron D. Ford, Attorney General, Steven G. Shevorski, Chief Litigation Counsel, and Kiel B. Ireland, Deputy Solicitor General, Carson City, for Appellants.

---

[1]The clerk of the court shall amend the caption on this court's docket so that it is consistent with the caption appearing on this opinion.

24-13606

Simons Hall Johnston PC and Brad M. Johnston, Yerington,
for Respondent.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This appeal involves a facial challenge to the constitutionality of several statutes regulating so-called "ghost guns." Except for transactions between firearms importers and manufacturers and where imprinted with a serial number, NRS 202.3625 generally criminalizes the sale or transfer of an unfinished firearm frame or receiver, and NRS 202.363(1) generally criminalizes the possession, purchase, transport, or receipt of an unfinished frame or receiver. Respondent argues that the definition of "unfinished frame or receiver" in NRS 202.253(9) is impermissibly vague, rendering it, NRS 202.3625, and NRS 202.363(1) unconstitutional. The district court agreed and concluded that the definition did not explain key terms or notify ordinary individuals precisely when raw materials would become an unfinished frame or receiver. The district court also concluded that the definition enabled arbitrary and discriminatory enforcement.

We disagree and reverse. The terms used to define "unfinished frame or receiver" have ordinary meanings that provide sufficient notice of what the statutes proscribe, such that it cannot be said that vagueness pervades their texts. We further conclude that the statutes are general intent statutes that do not lack a scienter requirement and do not pose a

SUPREME COURT
OF
NEVADA

(O) 1947A

risk of arbitrary or discriminatory enforcement. The district court thus erred in declaring that the statutes are unconstitutionally vague and enjoining them.

## FACTS AND PROCEDURAL HISTORY

The federal Gun Control Act (GCA) and its amendments regulate the possession, manufacture, sale, and transfer of "firearms." *See* 18 U.S.C. §§ 921-934. The GCA requires gun manufacturers, importers, and dealers to obtain a federal firearms license. *Id.* §§ 922(a)(1), 923(a). Licensed entities are called federal firearms licensees. Federal firearms licensees are required to serialize each firearm, run a background check before selling a firearm, and record each transaction. *Id.* §§ 922(c), (t)(1), 923(g), (i). A firearm is defined, in relevant part, as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or "the frame or receiver of any such weapon." *Id.* § 921(a)(3).

In 2021, Nevada legislators put forward a bill, A.B. 286, to regulate firearm components that are not imprinted with a serial number. Assemblyperson Sandra Jauregui—a sponsor of A.B. 286—spoke on the purpose of the bill. She said that it "deals with the rising epidemic of unmarked, untraceable guns known as 'ghost guns.'" She explained that "[g]host guns are growing in popularity because they circumvent background checks and are untraceable" and that they are "types of guns [that] are manufactured in homes and also sold online as kits that are often easily assembled." An advocate testified to the Legislature that ghost guns evade regulation under the GCA as they "exploit[ ] a loophole in the way the federal government regulates firearms" because companies that sell ghost guns "sell a frame or receiver that has not quite been fully manufactured [often referred to as 80% receiver or frame] and, as a result, the federal

government does not classify it as a firearm." As such, "it is not required to be serialized and not subject to any form of background check under the federal guidelines." Another advocate testified that respondent Polymer80 sold "a 'Buy, Build, Shoot' kit" that contained every piece needed to assemble a firearm within 20 to 40 minutes using simple hand tools.

A representative for the National Shooting Sports Foundation, Inc., however, raised vagueness concerns, arguing that "[u]nder this bill, there is not a clear definition of when that frame or receiver becomes a firearm. . . . At what point would a manufacturer or retailer need to comply with or treat that hunk of metal as a firearm?"

The Legislature ultimately passed the bill, and then-Governor Stephen Sisolak approved A.B. 286 on June 7, 2021. *See* 2021 Nev. Stat., ch. 496, at 3222. A.B. 286 amended NRS Chapter 202 to "prohibit[ ] a person from engaging in certain acts relating to unfinished frames or receivers under certain circumstances" and proscribe "certain acts relating to firearms which are not imprinted with a serial number." *Id.* Pointedly, A.B. 286 enacted NRS 202.253(9), NRS 202.3625, and NRS 202.363. NRS 202.253(9) defines "unfinished frame or receiver":

> "Unfinished frame or receiver" means a blank, a casting or a machined body that is intended to be turned into the frame or lower receiver of a firearm with additional machining and which has been formed or machined to the point at which most of the major machining operations have been completed to turn the blank, casting or machined body into a frame or lower receiver of a firearm even if the fire-control cavity area of the blank, casting or machined body is still completely solid and unmachined.

NRS 202.3625 provides

> 1. A person shall not sell, offer to sell or transfer an unfinished frame or receiver unless:
>
> (a) The person is:
>
> (1) A firearms importer or manufacturer; and
>
> (2) The recipient of the unfinished frame or receiver is a firearms importer or manufacturer; or
>
> (b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by an importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.
>
> 2. A person who violates this section:
>
> (a) For the first offense, is guilty of a gross misdemeanor; and
>
> (b) For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

And NRS 202.363 provides

> 1. A person shall not possess, purchase, transport or receive an unfinished frame or receiver unless:
>
> (a) The person is a firearms importer or manufacturer; or
>
> (b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by a firearms importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.
>
> 2. A person who violates this section:
>
> (a) For the first offense, is guilty of a gross misdemeanor; and

(b) For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

Polymer80 is a Nevada corporation that manufactures gun-related products and aftermarket accessories. It sells gun-related kits "that provide ways for [its] customer[s] to participate in the build process." Polymer80 argued that these newly enacted statutes are unconstitutionally vague and sought declaratory and injunctive relief against appellants Sisolak; Aaron Ford, Attorney General of Nevada; George Togliatti, Director of Nevada Department of Public Safety; and Mindy McKay, then-Administrator of the Records, Communications, and Compliance Division of the Nevada Department of Public Safety (collectively Sisolak). After discovery, Polymer80 and Sisolak filed cross-motions for summary judgment. Polymer80 argued that (1) NRS 202.253(9)'s definition of unfinished frame or receiver is vague because it does not define what a finished frame or receiver is; (2) the statute's definition of unfinished frame or receiver does not define "blank," "casting," or "machined body"; and (3) the definition does not clarify precisely when raw material becomes an unfinished frame or receiver. The district court granted summary judgment in Polymer80's favor, entered a declaratory judgment that the statutes are unconstitutionally vague, and issued a permanent injunction barring enforcement of NRS 202.3625 and NRS 202.363. Sisolak appeals.

## DISCUSSION

Sisolak argues that the challenged statutes are not unconstitutionally vague and provide fair notice of what is prohibited. He argues that the definition of "unfinished frame or receiver" uses terms commonly understood in the industry and that have ordinary dictionary definitions. Polymer80 maintains, as it did below, that several material

terms in NRS 202.253(9) have uncertain definitions, specifically highlighting that "blank," "casting," and "machined body" are not defined by statute and that "unfinished frame or receiver" also does not define what a "finished" frame or receiver is.

We review de novo whether a statute is constitutional and presume that it is valid. *Silvar v. Eighth Jud. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). A statute is unconstitutionally vague if the statute either (1) "fails to provide notice sufficient to enable persons of ordinary intelligence to understand what conduct is prohibited" or (2) "lacks specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and discriminatory enforcement." *Gallegos v. State*, 123 Nev. 289, 293, 163 P.3d 456, 458 (2007). Vagueness on either basis will invalidate a statute. *State v. Castaneda*, 126 Nev. 478, 482 n.1, 245 P.3d 550, 553 n.1 (2010). In reviewing a criminal statute, we examine whether "vagueness so permeates the text that the statute cannot meet these requirements in most applications." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 513, 217 P.3d 546, 554 (2009). Accordingly, "this standard provides for the possibility that some applications of the law would not be void, but the statute would still be invalid if void in most circumstances." *Id.*

*Ordinary meaning in context and trade usage provides sufficient clarity*

The terms challenged here may be ascertained with sufficient specificity by consulting their ordinary meanings in context. "[W]here the Legislature does not define each term it uses in a statute, the statute will not be deemed unconstitutional if the term has a well-settled and ordinarily understood meaning." *Collins v. State*, 125 Nev. 60, 63, 203 P.3d 90, 92 (2009). "When a word has more than one plain and ordinary meaning, the context and structure inform which of those meanings applies," *Lofthouse*

*v. State*, 136 Nev. 378, 380, 467 P.3d 609, 611 (2020), and we interpret statutes "in light of the policy and spirit of the law," *Flamingo Paradise*, 125 Nev. at 509, 217 P.3d at 551. "[V]agueness analysis does *not* treat statutory text as a closed universe." *Castaneda*, 126 Nev. at 483, 245 P.3d at 553. As a result, "[e]nough clarity to defeat a vagueness challenge may be supplied by judicial gloss on an otherwise uncertain statute." *Id.* (internal quotation marks omitted).

Where a statute targets a group engaging with a specifically regulated subject, resources specific to that subject may provide additional guidance. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 501 & n.18 (1982) (consulting and finding accord between ordinary and specialized dictionaries in examining vagueness of an ordinance regulating drug paraphernalia from the perspective of a "business person of ordinary intelligence" and concluding that "roach clip" was a "technical term [that] has sufficiently clear meaning in the drug paraphernalia industry"); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391-92 (1926) (recognizing that statutes generally have been upheld "as sufficiently certain" when "they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them").[2] In such instances, trade reference materials such as specialized

---

[2]And though we do not deal here with statutes solely regulating a particular industry, where parties practice within a regulated industry, trade usage has particular salience. For instance, parties who "were knowledgeable in the wastewater field" were charged with being able to understand Environmental Protection Agency regulations restricting the discharge of effluent into navigable water. *United States v. Weitzenhoff*, 35 F.3d 1275, 1286-87, 1289 (9th Cir. 1993). Similarly, technical language in the Commodity Futures Trading Act regulating commodity options was not unconstitutionally vague where members of the regulated group held

dictionaries and industry association publications may be consulted to ascertain a term's meaning. *See Flipside*, 455 U.S. at 501 n.18; *United States v. Elias*, 269 F.3d 1003, 1015 (9th Cir. 2001) (considering a definition from a chemical manufacturer trade association, among others, in concluding that a regulation of a particular type of chemical waste was not vague).

As vagueness analyses do not treat a statute as a closed universe, at the outset let us consider what the criminal statutes at issue aim to cover. It is common knowledge that firearms are heavily regulated objects, and existing law provides notice that the mere possession of firearms that do not comply with the applicable regulations constitutes a crime. *See* 26 U.S.C. § 5861 (enumerating prohibited acts involving firearms). The statutes here only regulate conduct involving an object that is intended to ultimately become a firearm. *See* NRS 202.253(9); NRS 202.3625; NRS 202.363. They prohibit acts involving such not-yet-complete firearms that have not been imprinted with a serial number. NRS 202.3625(1)(b); NRS 202.363(1). But the object must be intended to become a firearm. Should it become so and lack an imprinted serial number so as to fall within the scope of the criminal sanctions here, existing law already

---

specialized expertise and thoroughly knew what was prohibited, *Precious Metals Assocs., Inc. v. CFTC*, 620 F.2d 900, 907-08 (1st Cir. 1980), just as "fish trap" is not vague most critically because it has a definite meaning within the fishing industry, *Se. Fisheries Ass'n v. Dep't of Nat. Res.*, 453 So. 2d 1351, 1354 (Fla. 1984) (concluding as well that an ordinary person may grasp the meaning of the term), and "tidal marshlands" is not vague when considering the commercial knowledge of a company that dredges sand and gravel, *Potomac Sand & Gravel Co. v. Governor*, 293 A.2d 241, 252 (Md. 1972). *See also Silverwing Dev. v. Nev. State Contractors Bd.*, 136 Nev. 642, 645-46, 476 P.3d 461, 464-65 (2020) (recognizing authorities giving terms in a statute their trade meaning when the common meaning does not apply).

SUPREME COURT
OF
NEVADA

(O) 1947A

subjects the possessor of such a firearm to criminal liability. 26 U.S.C. § 5842(b) (requiring a serial number), § 5861(i) (providing that receipt or possession of firearm lacking a serial number is a crime). Further, the act of converting the uncompleted firearm into a firearm is also a crime unless one complies with federal restrictions as to the manufacture of a firearm. 26 U.S.C. § 5861(f) (criminalizing acts "to make a firearm in violation of the provisions of this chapter"). In recognizing that statutes need not provide mathematical precision and that "the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions," the United States Supreme Court has explained that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952). Here, one cannot dance up to the line of criminality and then plead ignorance of terms commonly known in the regulated subject.

*An "unfinished frame or receiver"*

With that in mind, we return to the text. To recall, NRS 202.253(9) defines an "unfinished frame or receiver" as

> a blank, a casting or a machined body that is intended to be turned into the frame or lower receiver of a firearm with additional machining and which has been formed or machined to the point at which most of the major machining operations have been completed to turn the blank, casting or machined body into a frame or lower receiver of a firearm even if the fire-control cavity area of the blank, casting or machined body is still completely solid and unmachined.

The district court had three bases for declaring NRS 202.3625 and NRS 202.363 unconstitutionally vague: (1) NRS 202.253(9) does not specifically define blank, casting, machined body, frame or lower receiver, major machining operations, and fire-control cavity area; (2) the definition does not make clear precisely when a raw material becomes a prohibited unfinished frame or receiver; and (3) NRS 202.3625 and NRS 202.363 lack a scienter requirement. We conclude, however, that the meanings of the terms contested here are readily ascertainable, and their meanings resolve the district court's second and third reservations.

*A "blank," a "casting," or a "machined body"*

Dictionary definitions supply meaning to each of the terms of the first component of NRS 202.253(9) based on the context of statutes aiming to regulate firearm components designed to be firearms with additional manufacturing. A "blank" is "a roughly cut metal . . . block intended for further shaping or finishing." *Blank, The New Oxford Dictionary of English* (3d ed. 2010). A "casting" is "an object made by shaping molten metal or other material in a mould." *Casting, The New Oxford Dictionary of English*. And a "machined body" is "a material object" that has been "ma[d]e or operate[d] on with a machine." *Body, Machine, The New Oxford Dictionary of English*. Industry definitions accord and similarly encompass a generic object. *See, e.g., Casting, Glossary of the Association of Firearm & Tool Mark Examiners* (6th ed. 2021) (defining "casting" as "the process of pouring a liquid or suspension into a mold to produce an object of desired shape"); *Glossary, Sporting Arms and Ammunition Manufacturers' Institute*, https://saami.org/saami-glossary/?letter=C (last visited Feb. 28, 2024) (defining "casting" as "[t]he act of forming an object, such as a bullet, by pouring molten material into a mold"). Moreover, the terms "blank," "casting," and "machined body" are

SUPREME COURT
OF
NEVADA

(O) 1947A

11

used in describing firearm components in guidance provided for these specific products. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), *Are "80%" or "unfinished" receivers illegal?*, https://www.atf.gov/firearms/qa/are-"80"-or-"unfinished"-receivers-illegal (last visited Feb. 28, 2024) ("ATF has long held that items such as receiver *blanks, 'castings'* or *'machined bodies'* in which the fire-control cavity area is completely solid and un-machined have not reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA." (emphasis added)). And Polymer80's counsel's letters to the ATF use "blank," "casting," and "machined" in reference to its own products, showing that these terms are commonly understood.

That the terms "blank," "casting," and "machined body" are generic and broad does not render them vague; rather, it requires interpreting them in context with the modifying clause, namely that they are "intended to be turned into the frame or lower receiver of a firearm." *Cf. Blackburn v. State*, 129 Nev. 92, 97, 294 P.3d 422, 426 (2013) ("A statute cannot be dissected into individual words, each one being thrown onto the anvil of dialectics to be hammered into a meaning which has no association with the words from which it has violently been separated." (internal quotation marks omitted)). The definition of an "unfinished frame or receiver" thus encompasses a wide range of materials *intended to ultimately be firearms* where other elements are also met, as we will revisit in discussing the mens rea the State must show.

*The "frame or lower receiver of a firearm"*

We next turn to the meaning of "frame or lower receiver of a firearm." These terms likewise may be understood by their ordinary meanings, which accord with and are given greater specificity by the firearms industry. A "frame" is "the basic unit of a handgun which serves

as a mounting for the barrel and operating parts of the arm." *Frame, Webster's Third New International Dictionary* (2002); *see also Frame, Glossary of the Association of Firearm & Tool Mark Examiners* (defining "frame" as "[i]n revolvers, pistols, and break-open guns, the basic unit of a firearm which houses the firing and breech mechanism and to which the barrel and grips are attached"). And a "receiver" is "the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached" or "the main body of the lock in a breech mechanism." *Receiver, Webster's Third New International Dictionary.* Industry groups also accord with these ordinary meanings and tend to describe the frame and receiver in relation to each other. *See Receiver, Glossary of the Association of Firearm & Tool Mark Examiners* (defining "Receiver" as "the basic unit of a firearm which houses the firing and breech mechanism and to which the barrel and stock are assembled. In revolvers, pistols, and break-open guns, it is called the Frame"); *Receiver, Glossary, Sporting Arms and Ammunition Manufacturers' Institute,* https://saami.org/saami-glossary/?letter=R (last visited Feb. 28, 2024) (same). This understanding aligns with a definition that Polymer80's own counsel used and described as "ordinary nomenclature" in a letter to the ATF. Indeed, even the district court judge remarked at a temporary-restraining-order hearing that "frame or lower receiver" were not vague but were instead "common terms in relation to firearms." As such, we conclude that this language is not vague.

*"Most of the major machining operations"*

The next component of NRS 202.253(9) requires the State to show that "most of the major machining operations have been completed." Here too, dictionaries provide critical notice. "[M]ost" in this context means "the majority of"; that is, more than 50 percent. *Most, The New Oxford Dictionary of English.* And "major machining operations" designates

SUPREME COURT
OF
NEVADA

(O) 1947A

13

"greater or more important" "mak[ing] or operat[ing] on with a machine" in the process of "functioning or being active." *Machine, Major, Operations, The New Oxford Dictionary of English.* Insofar as "greater or more important" manufacturing lacks definiteness, we distinguish major operations from minor operations and interpret this term contextually to mean that "major" operations are those that pertain to the ultimate functioning of the object as a firearm—as distinct from "minor" operations that may be merely decorative or otherwise incidental to the object's operation as a firearm. *See Castaneda*, 126 Nev. at 483, 245 P.3d at 553 (recognizing that a judicial gloss on an uncertain term may cure vagueness). And while the district court singled out both "machining" and "major machining operations" as lacking clarity, we construe them in the same sense and conclude that "machining" means "mak[ing] or operat[ing] on with a machine." *See In re Nev. State Eng'r Ruling No. 5823*, 128 Nev. 232, 240, 277 P.3d 449, 454 (2012) (recognizing that "[t]he same words used twice in the same [statute] are presumed to have the same meaning" (quoting 2A Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 46:6 (7th ed. rev. 2014))).

Whether a given operation constitutes a major machining operation should be determined by a district court based on the facts of each case. *See Palakiko v. Harper*, 209 F.2d 75, 102 & n.37 (9th Cir. 1953) (concluding that whether the cruelty or atrocity there at issue was "extreme" was not vague but a matter of degree and recognizing that it presented a question for resolution by the factfinder). In the context of a facial challenge, we are ill-situated to determine as a factual matter whether the work performed on a blank, casting, or machined body would constitute a major machining operation. Doing so may involve assessing

the condition of the object, the degree of its completion, the types of processes that have been performed to manipulate the object, and other factual circumstances. That the statutes have not provided granular precision in this regard does not render them facially vague, and courts will be able to determine whether a given object falls within their scope in the ordinary course of factfinding. *See Castaneda*, 126 Nev. at 482, 245 P.3d at 553 ("[M]athematical precision is not possible in drafting statutory language." (internal quotation marks omitted)).

The district court here declared the statutes unconstitutional in part because "[t]he definition [of unfinished frame or receiver] does not tell anyone when during the manufacturing process a blank, casting, or machined body . . . has gone through the 'major machining operations' (whatever those are) to turn that blank, casting, or machined body into a frame or lower receiver." This conclusion neglected to closely engage with the text of the statutes, particularly in light of the presumption that a statute is constitutional. That the meaning of the terms at issue appeared obscure to the district court when presented with hypotheticals does not render them vague. Rather, it highlights the difficulty of analyzing vagueness when considering a facial challenge to the statutory definition of an object, and we conclude that Polymer80 has not shown vagueness in this regard. *See Silvar v. Eighth Jud. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006) ("The challenger bears the burden of showing that a statute is unconstitutional."); *cf. State v. Peters*, 534 So. 2d 760, 767 n.12 (Fla. Dist. Ct. App. 1988) ("Most vagueness challenges concern laws which define conduct, not objects.").

*"Fire-control cavity area"*

And lastly we clarify the meaning of "fire-control cavity area." This term refers to "an empty space within a solid object" "allocated for a specific use," which is to "regulate (a mechanical . . . process)," namely, to "discharge a gun or other weapon in order to propel (a bullet or other projectile)." *Area, Cavity, Control, Fire, The New Oxford Dictionary of English.* NRS 202.253(9) provides that an object may still constitute an unfinished frame or receiver even if the fire-control cavity area is still solid or unmachined. Notably, this forecloses a defense but does not present an element that a potential prosecution must show. We conclude that ordinary meanings of "fire-control cavity area" provide sufficient guidance to interpret this terminology in context.

In sum, the meaning of the terms used in NRS 202.253(9) are readily ascertainable through their ordinary usage and understandings common to the heavily regulated subject of firearms. A district court will be well situated to determine whether a particular object constitutes an unfinished frame or receiver in the course of performing its customary functions. On its own terms, the language of NRS 202.253(9) provides sufficient notice, and vagueness does not permeate its text.[3]

---

[3]Polymer80's invocation of *Gallegos* does not compel a different outcome. *Gallegos* held a statute using, without defining, "fugitive from justice" to be unconstitutionally vague. 123 Nev. 289, 291, 163 P.3d 456, 457 (2007). Unlike here, *Gallegos* concluded that the challenged term lacked an ordinary meaning and was subject to multiple definitions that significantly differed. *Id.* at 295, 163 P.3d at 460. Nor is Polymer80's argument that the statute is infirm for failing to define "finished frame or receiver" persuasive. Not only is "finished" not used in the statutes, but the term may be readily understood by the broader regulatory context—a finished frame or receiver would be a completed frame or receiver, that is, one subject to the GCA. *See* 18 U.S.C. § 921(a)(3) (defining "firearm").

 

*A defendant must know that the object is intended to be turned into a firearm to be subject to potential criminal liability under NRS 202.3625 or NRS 202.363*

Sisolak argues that the district court erred in concluding that express scienter language was required. The district court concluded that the offenses set forth in NRS 202.3625 and NRS 202.363 lack a scienter requirement because the definition of an "unfinished frame or receiver" in NRS 202.253(9) is silent as to scienter. The court stated that "the object itself cannot transfer specific intent to the possessor of the item." In this, we conclude that the district court erred.

Nevada law requires each crime to involve the union of act and intent. NRS 193.190. Though the statutes in question do not state mens rea requirements, it does not necessarily follow that they exclude such elements, as "mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (internal quotation marks omitted). Notwithstanding certain exceptions, a "guilty mind" is necessary to establish that a crime was committed, and courts generally construe "criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Id.* (internal quotation marks omitted).

While the definition of an "unfinished frame or receiver" refers to an object *intended* to be turned into a frame or lower receiver of a firearm, that definition does not state a crime. Instead, NRS 202.3625 and NRS 202.363 set forth the conduct that is criminalized here. NRS 202.3625 generally bars the sale, offer to sell, or transfer of an unfinished frame or receiver, and NRS 202.363 generally bars the possession, purchase, transport, or receipt of the same. While the Legislature did not designate

SUPREME COURT
OF
NEVADA

(O) 1947A

the necessary mental state, the statutes do not indicate that it intended to require either strict liability or specific intent. Accordingly, we conclude that NRS 202.3625 and NRS 202.363 are general intent statutes. *See Busefink v. State*, 128 Nev. 525, 535-36, 286 P.3d 599, 606-07 (2012) (construing criminal statute as requiring general intent where it omitted mention of mental state and provided adequate notice of what was prohibited); *Jenkins v. State*, 110 Nev. 865, 870-71, 877 P.2d 1063, 1066-67 (1994) (concluding that statute criminalizing statutory sexual seduction that omitted a mental-state term was a general intent crime); *Glegola v. State*, 110 Nev. 344, 346-47, 871 P.2d 950, 952 (1994) (concluding that the Legislature intended for two criminal statutes that did not mention mental state to create general intent offenses where it omitted any language indicating that specific intent was required).

Where a criminal statute includes an element that an object be intended for use in a particular way, the prosecution must show that a defendant knew of the characteristics bringing the object within the scope of the statute. For example, the United States Supreme Court has construed the phrase "intended for use" to "refer[ ] to a product's likely use rather than to the defendant's state of mind" and noted that the phrase should "be understood objectively and refers generally to an item's likely use." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519, 521 (1994) (construing a statute criminalizing the sale of drug paraphernalia); *see also id.* at 522 (remarking that Congress's omission of language stating that the product was "knowingly" intended to be so used did not establish a legislative intent to eliminate the scienter requirement). And thus, to be convicted of selling drug paraphernalia, a defendant must know the proscribed characteristic of the paraphernalia, that is, that the objects

would likely be used with illegal drugs. *Id.* at 524. Similarly, the Court has held that a conviction for mailing obscene materials required the prosecution to show that a defendant knew the characteristics of the contents of a mailed package—but not that they were obscene as a matter of law. *Hamling v. United States*, 418 U.S. 87, 119-21 (1974). More analogously, the Court overturned a conviction for criminal possession of an unregistered machinegun where the State showed that the defendant knowingly possessed the firearm but failed to show that the defendant knew that the firearm was capable of firing automatically so as to constitute a machinegun. *Staples v. United States*, 511 U.S. 600, 611-12, 620 (1994).

Applying these principles here bolsters our conclusion that the challenged statutes are not unconstitutionally vague due to the lack of an express scienter requirement. In prosecuting an offense pursuant to NRS 202.3625 or NRS 202.363, the State must show that the defendant willfully sold, offered to sell, transferred, possessed, purchased, transported, or received an unfinished frame or receiver and that the defendant knew that the object at issue had the objective characteristics of being intended to be turned into a firearm. Our discussion of specific factual characteristics showing the knowledge element is limited, given that the district court here conducted a facial rather than as-applied vagueness analysis. Accordingly, it did not enter findings as to specific characteristics of any challenged object. It is not our role to speculate about what facts future cases may present, and it suffices here to recognize that, once again, this knowledge element will require a factual determination in the district court and the statutes are not unconstitutionally vague on this basis.

*The statutes do not pose a risk of arbitrary enforcement*

Sisolak argues that the challenged statutes provide sufficient guidance to alleviate any risk of arbitrary enforcement. Polymer80

SUPREME COURT
OF
NEVADA

(O) 1947A

19

counters that the statutes lack meaningful standards and encourage discriminatory enforcement. We agree with Sisolak.

A statute is impermissibly vague if it would "allow the police, prosecutors, and juries to 'pursue their personal predilections.'" *Silvar*, 122 Nev. at 293, 129 P.3d at 685 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). We conclude that the definition of NRS 202.253(9) provides sufficient notice of what is prohibited and the conduct proscribed in NRS 202.3625 and NRS 202.363 is sufficiently definite that these statutes do not present a risk of arbitrary enforcement. Whatever discretion they leave is no greater than any other criminal statute.

*The district court erred in granting summary judgment*

In light of our determination that NRS 202.253(9) is not unconstitutionally vague, we conclude that the district court erred in granting declaratory relief and abused its discretion issuing a permanent injunction enjoining the enforcement of NRS 202.3625 and NRS 202.363. *See Sowers v. Forest Hills Subdiv.*, 129 Nev. 99, 108, 294 P.3d 427, 433 (2013) (reviewing the district court's decision to issue a permanent injunction for abuse of discretion but reviewing purely legal issues de novo).

## CONCLUSION

The district court erred in declaring that the definition of "unfinished frame or receiver" in NRS 202.253(9) is unconstitutionally vague and in enjoining the enforcement of NRS 202.3625 and NRS 202.363. Given that the definition employs terms ascertainable by their ordinary meanings and that align with trade and industry usage, we conclude it is not vague. Further, we conclude the statutes are general intent statutes and are sufficiently definite that they do not risk arbitrary or discriminatory

enforcement.  Accordingly, summary judgment in favor of Polymer80 on the basis of vagueness was not warranted.  Given the foregoing, we reverse.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Pickering

_____, J.
Lee

_____, J.
Bell